**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
GREENVILLE DIVISION**

| | | |
|---|---|---|
| SCOTT DAIRY FARM, INC., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 2:07-CV-208 |
| | ) | **JUDGE GREER** |
| v. | ) | |
| | ) | |
| DEAN FOODS COMPANY, *et al.*, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANT SOUTHERN MARKETING AGENCY, INC.'S
MEMORANDUM OF LAW IN SUPPORT OF ITS 12(B)(6) MOTION TO DISMISS
PLAINTIFFS' COMPLAINT FOR FAILURE TO STATE A CLAIM**

i

# TABLE OF CONTENTS

OVERVIEW ........................................................................................................................ 1

PROCEDURAL AND FACTUAL BACKGROUND ............................................................ 2

PLEADING STANDARD UNDER FED. R. CIV. P. 12(B)(6) ............................................ 4

ARGUMENT ..................................................................................................................... 5

    **I.**    **The Capper-Volstead Act Immunizes SMA's Actions From Antitrust Challenges** ............... 5

        **A.**    **SMA Qualifies as a Capper-Volstead Cooperative** ........................................ 6

        **B.**    **In Light of the Broad Immunity Afforded SMA by Capper-Volstead, Plaintiffs Have Failed to State a Claim for Federal Antitrust Violations Upon Which Relief Can Be Granted** ........................................ 7

    **II.**    **Plaintiffs Have Not Stated a Plausible Claim that SMA Is Part of an Illegal Conspiracy** ........................................................................................................... 10

        **A.**    **Plaintiffs' Specific Allegations Against SMA are Insubstantial** ................. 10

        **B.**    ***Twombly* Sets the Standard for Pleading in This Case** ............................... 12

        **C.**    **Plaintiffs Fail to Plausibly Allege that SMA Ever Joined an Illegal Conspiracy** ............................................................................................... 14

        **D.**    **Plaintiffs Have, at Most, Alleged Independent Conduct by SMA** .............. 16

        **E.**    **Plaintiffs Have Not Met the Burden of Pleading Required by the Capper-Volstead Act** ..................................................................................... 17

        **F.**    **Plaintiffs' Generalized Allegations About "Defendants" are Not Sufficient to State a Claim Against SMA** ........................................ 18

        **G.**    **Plaintiffs Have Not Alleged a Plausible Claim that the Market is Foreclosed** .......... 19

    **III.**    **Plaintiffs Have Not Alleged that SMA Possesses Unlawful Monopsony or Monopoly Power…** ........................................................................................................... 20

CONCLUSION ............................................................................................................ 211

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Agritronics Corp. v. Nat'l Dairy Herd Ass'n, Inc.*,
914 F. Supp. 814 (N.D.N.Y. 1996) ..................................................................6, 9

*Bell Atlantic Corp. v. Twombly*,
127 S. Ct. 1955 (2007) ................................................................................... *passim*

*Bell v. Fur Breeders Agricultural Cooperative*,
348 F.3d 1224 (10th Cir. 2003) ........................................................................9

*Concord Boat Corp. v. Brunswick Corp.*,
207 F.3d 1039 (8th Cir. 2000) .................................................................... 18-19

*Dodd v. Woods Mem'l Hosp.*,
No. 06 CV 56, 2007 WL 2463275 (E.D. Tenn. Aug. 28, 2007)..............................4

*Estate Constr. Co. v. Miller & Smith Holding Co.*,
14 F.3d 213 (4th Cir. 1994) ..............................................................................14

*Ezzo's Investments, Inc. v. Aveda Corp.*
238 F.3d 420 (Table), 2000 WL 1888677 (6th Cir. Dec. 19, 2000) ................. 14-15

*Fairdale Farms, Inc. v. Yankee Milk, Inc.*,
625 F.2d 1037 (2d Cir. 1980)........................................................................... 7-9

*Green v. Associated Milk Producers, Inc.*,
692 F.2d 1153 (8th Cir. 1982) ...........................................................................7

*In re Elevator Antitrust Litig.*,
No. 06-3128-cv, 2007 U.S. App. LEXIS 21086 (2d Cir. Sept. 4, 2007) ........................ 12-15

*Jung v. Association of American Medical Colleges*
300 F. Supp. 2d 119 (D.D.C. 2004) ............................................................... 17-18

*L. & L. Howell, Inc. v. Cincinnati Co-op. Milk Sales Ass'n*,
716 F.2d 903 (Table), 1983 WL 162169, (6th Cir. July 20, 1983)..........................9

*Maryland & Virginia Milk Producers Ass'n, Inc. v. U. S.*,
362 U.S. 458 (1960)...........................................................................................9

*Nat'l Farmers Org. v. Associated Milk Producers, Inc.*,
687 F.2d 1173 (8th Cir. 1982) ........................................................................ 5-7

*Roberson v. Medtronic, Inc.*,
No. 04-2183 D/P, 2007 WL 1932964 (W.D. Tenn. Apr. 23, 2007) ........................5

*Scheid v. Fanny Farmer Candy Shops, Inc.*,
859 F.2d 434 (6th Cir. 1988) ................................................................4

*Treasure Valley Potato Bargaining Assoc. v. Ore-Ida Foods, Inc.*,
497 F.2d 203 (9th Cir. 1974) ................................................................8

*U.S. v. Dairymen*,
660 F.2d 192 (6th Cir. 1982) ................................................ 5, 7-8, 17

*Vermilion Foam Products Co. v. General Electric Co.*,
386 F. Supp. 255 (E.D. Mich. 1974).....................................................17

**STATUTES**

Capper-Volstead Act, 7 U.S.C. § 291 ................................................... *passim*

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(6).......................................................................... *passim*

## OVERVIEW

Plaintiffs allege a wide-ranging antitrust conspiracy among various corporations and associations, including a relatively small player like Defendant Southern Marketing Agency, Inc. ("SMA"), to monopolize the purchase of raw Grade A milk and flood the Southeast milk market with the goal of unlawfully "depressing and/or de-stabilizing" milk prices paid to Plaintiffs and the putative class members. Plaintiffs' Complaint, however, fails at the most fundamental level and must be dismissed.

First, grievously omitted from the Complaint is any mention of the Capper-Volstead Act, 7.U.S.C. § 291, which immunizes the conduct of SMA to the extent it was involved in meeting, discussing, and acting upon issues relating to the sale, handling, and marketing of raw Grade A milk. Given that the allegations in the Complaint revolve around claims of injury resulting from such lawfully protected marketing agreements, Plaintiffs' Complaint fails to state a claim against SMA.

Second, Plaintiffs' Complaint does not set forth specific facts, as required by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007), plausibly alleging who, what, when, where, and how SMA joined or participated in any of the alleged wrongful agreements beyond purportedly being involved in monitoring prices paid to SMA's members and the marketing and pooling of SMA's members' milk—both of which are legally protected activities under federal law as discussed further below. Further, the Complaint fail to plausibly allege why SMA, a marketing agency in common that is comprised of dairy cooperatives and dairy farmers, would seek to depress prices for the very milk it seeks to market for its members.

For these reasons, Plaintiffs' Complaint fails to state a claim upon which relief can be granted and should, therefore, be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). Furthermore, in

addition to the grounds stated herein, SMA adopts and incorporates by reference the grounds and arguments made in the Motion to Dismiss and Joint Memorandum of Law filed by Defendants Dean Foods Company ("Dean"), National Dairy Holdings, L.P. ("NDH"), Dairy Farmers of America, Inc. ("DFA"), Mid-Am Capital LLC ("Mid-Am"), and Dairy Marketing Services, LLC ("DMS").

## PROCEDURAL AND FACTUAL BACKGROUND

On August 24, 2007, Plaintiffs, a group of independent dairy farmers, filed two class action complaints against several dairy cooperatives, bottlers, and marketing agencies, including Dean, NDH, DFA, Mid-Am, DMS, and SMA. (Compl. at 2.) Plaintiffs allege conspiracy-related causes of action under Sections 1 and 2 of the Sherman Act against all Defendants. (Coml. ¶¶ 72-78 (Count I alleging violation of Section 2 of the Sherman Act), ¶¶ 95-104 (Count IV alleging violation of Section 1 of the Sherman Act).) Additionally, Plaintiffs allege causes of action for monopoly against DFA and for monopsony against DFA, Dean, and NDH. (Compl. ¶¶ 79-85 (Count II alleging unlawful monopoly under Section 2 of the Sherman Act), ¶¶ 86-94 (Count III alleging unlawful monopsony under Section 2 of the Sherman Act).) These two causes of action do not seek damages against SMA. (*See* Compl. ¶¶ 79-85, 86-94.) Defendant SMA now moves to dismiss the two causes of action against it pursuant to Federal Rule of Civil Procedure 12(b)(6).

SMA is a milk marketing agency in common comprised of dairy cooperatives, each of which is comprised of numerous dairy farmers. SMA, like other dairy cooperatives and marketing agencies, handles and markets the collective milk produced by SMA's dairy cooperative members. (*See, e.g.*, Compl. ¶ 37 (discussing generally the responsibilities of dairy cooperatives).) SMA's responsibilities in handling and marketing its member cooperatives'

milk, like those of other dairy cooperatives and marketing agencies, include locating buyers, negotiating sales prices, coordinating hauling, performing testing, recording and reporting related data to the federal milk market administrator, and paying member farmers for their Grade A milk. (*See id.*)

SMA markets raw milk through the comprehensive regulatory framework of the FMMO program established by the USDA and administered by the Secretary of Agriculture (the "Secretary") and the local Market Administrator. The USDA via the FMMO establishes the minimum prices paid for each class of Grade A milk marketed within each of the FMMOs, including Orders 5 and 7 which are at issue in this action. (*See* Compl. ¶¶ 30-33.) In addition to establishing the minimum class prices for Grade A milk, the USDA through the Market Administrator broadly oversees and monitors the sale and marketing of milk produced by dairy farmers, cooperatives and marketing agencies within each relevant marketing region, including the Southeast milk marketing region in which Orders 5 and 7 are located.

Despite the comprehensive and complex regulatory framework within which SMA and the other Defendants operate, Plaintiffs allege in a conclusory fashion that Defendants have engaged in a broad conspiracy to depress and stabilize prices paid to independent dairy farmers for Grade A milk produced in the Southeast. (*See* Compl. ¶ 1.) Additionally, Plaintiffs allege that Defendants have engaged in anticompetitive behavior to foreclose free access by independent dairy farmers to fluid Grade A milk bottling plants in the Southeast. (*Id.*)

In support of these broad antitrust allegations, Plaintiffs allege that Defendants entered into several long-term exclusive full-supply agreements intended to limit access to the fluid Grade A milk bottling plants to DFA, SMA, and DMS members only, and to thereby depress the over-order premiums paid by processors and bottlers to dairy farmers for their raw Grade A milk.

3

(Compl. ¶¶ 2a, 49-55.) Plaintiffs allege that, by means of the full-supply agreements, "boycotting," or "punishment," DFA has coerced independent dairy farmers and independent dairy cooperatives into marketing their Grade A milk through DMS, SMA, and/or other DFA-controlled cooperatives and marketing entities in order to gain access to fluid Grade A milk bottling plants. (Compl. ¶¶ 2b, 54-55.) Plaintiffs do *not* directly allege that SMA has engaged in any such coercion. At most, Plaintiffs allege only that SMA has monitored prices paid to all dairy farmers and dairy cooperatives for Grade A milk within the Southeast marketing region, actions which, Plaintiffs allege, have had the effect of depressing and stabilizing the over-order premiums paid to SMA member cooperatives and, in turn, Southeast dairy farmers. (Compl. ¶ 55.)

## PLEADING STANDARD UNDER FED. R. CIV. P. 12(B)(6)

Federal Rule of Civil Procedure 12(b)(6) provides a court with the authority to dismiss a complaint if it fails to state a claim upon which relief can be granted. *Dodd v. Woods Mem'l Hosp.*, No. 06 CV 56, 2007 WL 2463275, at *2 (E.D. Tenn. Aug. 28, 2007). In other words, Rule 12(b)(6) "tests whether a cognizable claim has been pleaded in the complaint." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988). Accordingly, to survive dismissal, a "pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007) (*citing* 5 C. Wright & A. Miller, Federal Practice and Procedure, § 1216, pp. 235-36 (3d ed. 2004)).

At its core, Rule 12(b)(6) "allows the court to dismiss meritless cases which would otherwise waste judicial resources and result in unnecessary discovery," a consideration which the Supreme Court has found significantly more important and persuasive in antitrust cases.

*Roberson v. Medtronic, Inc.*, No. 04-2183 D/P, 2007 WL 1932964, at *1 (W.D. Tenn. Apr. 23, 2007); *see also Twombly*, 127 S. Ct. 1955. "[T]he costs of modern federal antitrust litigation and the increasing caseload of the federal courts counsel against sending the parties into discovery when there is no reasonable likelihood that the plaintiffs can construct a claim from the events related in the complaint." *Twombly*, 127 S.Ct. at 1967. Thus, to avoid cumbersome and unnecessary discovery, the Court reasoned that pleading deficiencies in antitrust cases must be exposed as early as possible and facially implausible antitrust complaints dismissed prior to the onslaught of discovery. *See id.*

## ARGUMENT

In this instance, Plaintiffs have failed to plead a legally cognizable cause of action against SMA for the following three reasons: (1) the Capper-Volstead Act immunizes SMA's efforts in the preparation for market, marketing, and handling of its cooperative members' raw milk from the very antitrust liability for which Plaintiffs complain; and (2) pursuant to the pleading standard enunciated for antitrust class actions in *Twombly*, Plaintiffs have failed to plead any facts with sufficient specificity to give rise to a *plausible* claim for relief under either Section 1 or Section 2 of the Sherman Act against SMA. For these reasons, Plaintiffs' Complaint fails to state a claim upon which relief can be granted and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## I. **The Capper-Volstead Act Immunizes SMA's Actions From Antitrust Challenges**

The Capper-Volstead Act, 7 U.S.C. § 291, enables dairy farmers, among others, to band together to collectively market and sell their milk without fear of violating the federal antitrust laws. *See U.S. v. Dairymen*, 660 F.2d 192, 194 (6th Cir. 1982); *Nat'l Farmers Org. v.*

*Associated Milk Producers, Inc.*, 687 F.2d 1173, 1184-85 (8th Cir.1982). Capper-Volstead provides that:

> [p]ersons engaged in the production of agricultural products as farmers, planters, ranchmen, dairymen, nut or fruit growers may act together in associations, corporate or otherwise, with or without capital stock, *in collectively processing, preparing for market, handling, and marketing* in interstate and foreign commerce, such products of persons so engaged. *Such associations may have marketing agencies in common; and such associations and their members may make the necessary contracts and agreements to effect such purposes.*

7 U.S.C. § 291 (emphasis added). In light of this permissive language, it becomes clear that the Plaintiffs are, in essence, challenging the very milk marketing and handling efforts that SMA is legally entitled to carry out pursuant to the protections afforded by Capper-Volstead.

## A.     SMA Qualifies as a Capper-Volstead Cooperative

In order to qualify for Capper-Volstead immunity, an agricultural cooperative must satisfy two requirements: "First, the organization claiming to be immunized from liability must be composed of 'members' that are 'producers of agricultural products' or cooperatives composed of such producers. Second, such an organization must be involved in the 'processing, preparing for market, handling, or marketing' of the agricultural products of its members." *Agritronics Corp. v. Nat'l Dairy Herd Ass'n, Inc.*, 914 F. Supp. 814, 823 (N.D.N.Y. 1996); *see also* 7 U.S.C. § 291. SMA satisfies both of these requirements for Capper-Volstead protection.

First, SMA is a "marketing agency in common" comprised of five dairy cooperatives, including Defendant DFA, each of which in turn is comprised of numerous dairy farmers/producers. In essence, SMA is a cooperative of dairy cooperatives, the union of which is explicitly authorized by the Capper-Volstead Act. *See* 7 U.S.C. § 291 (providing that associations of dairymen or producers "may have marketing agencies in common").

Second, SMA operates for the sole benefit of its member-cooperatives in marketing their raw milk throughout the Southeastern marketing region. This activity goes to the heart for which dairy cooperatives join SMA—to take full competitive advantage of the collective marketing of the raw milk produced by the cooperative members. Moreover, SMA arranges for the transportation and hauling of milk for the collective benefit of its member cooperatives, activities which also suffice to bring SMA, and Baird as its manager, within the protection afforded by Capper-Volstead. *See Green v. Associated Milk Producers, Inc.*, 692 F.2d 1153, 1157 (8th Cir. 1982).

**B.** **In Light of the Broad Immunity Afforded SMA by Capper-Volstead, Plaintiffs Have Failed to State a Claim for Federal Antitrust Violations Upon Which Relief Can Be Granted**

First, to the extent Plaintiffs challenge SMA's activity in connection with the sale and marketing of its cooperative members' raw Grade A milk, such activity is immunized by the Capper-Volstead Act.[1] (*See e.g.*, Compl. ¶ 1, 2b, 2e, 55, 57-58.) Courts have consistently interpreted the Capper-Volstead Act to permit "[t]wo or more cooperatives [to] voluntarily join together solely for the purpose of setting uniform prices for their members." *Dairymen*, 660 F.2d at 194; *Fairdale Farms, Inc. v. Yankee Milk, Inc.*, 625 F.2d 1037, 1039 (2d Cir. 1980). Further, agreements or milk marketing arrangements entered into by Capper-Volstead cooperatives or marketing agencies in common to establish prices paid to their member cooperatives are likewise authorized and permissible under Capper-Volstead. *See Nat'l Farmers Org.*, 687 F.2d at 1184 ("the milk marketing contracts and programs promoted by NFO . . . do not constitute actionable price fixing in light of the Capper-Volstead exemption.").

---

[1] While not relevant at this stage, the evidence will show that SMA has never set over-order premiums. The evidence will also show that Plaintiffs are aware that Dairy Cooperative Marketing Association ("DCMA") is the entity that sets over-order premiums.

Second, to the extent Plaintiffs allege anticompetitive behavior based upon the fact that SMA (and DMS) "market nearly all the Grade A milk produced in the Southeast," (Compl. ¶ 55), such an allegation is precluded by Capper-Volstead, which sanctions the acquisition of monopoly power by dairy cooperatives and/or marketing agencies in common. "Capper-Volstead gives farmers the right to combine into cooperative monopolies." *Fairdale Farms*, 635 F.2d at 1040; *see also Dairymen*, 660 F.2d at 194 ("[A]n agricultural cooperative can willfully attain a monopoly through the voluntary enrollment of its members, or through a voluntary combination with other cooperatives. The mere accretion of monopoly power through voluntary combination is immunized by the Capper-Volstead Act."). Plaintiffs have failed to allege that SMA itself tried to increase SMA's membership by anything but voluntary means—*i.e.*, Plaintiffs have not alleged that SMA forced, coerced, threatened, or harassed its member cooperatives into joining SMA.

Third, to the extent Plaintiffs allege anticompetitive behavior against SMA in connection with SMA's "monitoring" of the prices paid to dairy farmers (Compl. ¶¶ 2f, 55, 58-60), such an allegation is likewise precluded by Capper-Volstead. Courts have broadly interpreted "marketing" under the Capper-Volstead Act to include "[t]he aggregate of functions involved in transferring title and in moving goods from producer to consumer, including among others buying, selling, storing, transporting, standardizing, financing, risk bearing, and supplying market information." *Treasure Valley Potato Bargaining Assoc. v. Ore-Ida Foods, Inc.*, 497 F.2d 203, 215 (9th Cir. 1974); *see also Fairdale Farms*, 625 F.2d at 1040. Clearly, then, any actions taken by SMA to "monitor" the prices paid to dairy farmers are protected under the broad umbrella of "marketing" protection afforded by Capper-Volstead.

Plaintiffs also allege antitrust violations based upon the fact that SMA and DFA share common employees "who enable Defendants to monitor and enforce compliance with their conspiracy." (Compl. ¶ 60.) Putting aside the fact that DFA is a member of SMA and that any allegation of conspiracy between SMA and DFA would necessarily amount to an allegation that SMA was conspiring with itself, Capper-Volstead expressly authorizes marketing agencies in common and/or cooperatives to "conspire" with other marketing agencies in common and/or cooperatives to handle and market raw Grade A milk. *See L. & L. Howell, Inc. v. Cincinnati Co-op. Milk Sales Ass'n*, 716 F.2d 903 (Table), Nos. 81-3491 & 81-3492, 1983 WL 162169, at *4 (6th Cir. Jul. 20, 1983) (affirming that two dairy cooperatives could permissibly "conspire" together under the auspices of Capper-Volstead to effectuate the hauling of raw milk for their Order).

Admittedly, "a cooperative may neither acquire nor exercise monopoly power in a predatory fashion by the use of such tactics as picketing and harassment, boycotts, coerced membership, and discriminatory pricing." *Fairdale Farms*, 635 F.2d at 1044 (citations omitted); *see also Bell v. Fur Breeders Agricultural Cooperative*, 348 F.3d 1224, 1232 (10th Cir. 2003); *Agritronics*, 914 F. Supp. at 825. However, the facts plead by Plaintiffs against SMA fail to place SMA's activities beyond the sanctuary of the Capper-Volstead Act. Nowhere in the Complaint do Plaintiffs specifically allege that SMA itself boycotted plaintiffs, threatened plaintiffs, harassed plaintiffs, coerced their membership in SMA, or engaged in discriminatory pricing. *Compare Maryland & Virginia Milk Producers Ass'n, Inc. v. U. S.*, 362 U.S. 458, 468 (1960) (plaintiffs specifically alleged that defendant dairy cooperative interfered with truck shipments of non-members' milk, attempted to induce dairy bottling to stop using non-member producers, and engaged in boycott of feed and farm supply owners who owned competitive

dairy); *Agritronics*, 914 F. Supp. at 826 (plaintiffs specifically alleged that defendant dairy cooperative itself coerced plaintiffs' membership, barred access to essential facilities, and forbade private testers from competing with defendants).  At best, Plaintiffs have merely recited conclusory allegations of predatory behavior against Defendants as a whole, without identifying any improper or actionable conduct by SMA.

## II.    Plaintiffs Have Not Stated a Plausible Claim that SMA Is Part of an Illegal Conspiracy

Plaintiffs' Complaint should be dismissed as to SMA because it fails to plead facts indicating that SMA entered into an unlawful conspiracy.  Plaintiffs' allegations regarding SMA are insubstantial and omit even an explicit allegation that SMA agreed to join the alleged conspiracy.  Thus, under the pleading standard laid out in a recent Supreme Court case, *Bell Atlantic v. Twombly*, Plaintiffs have failed to state a claim against SMA.  Plaintiffs fail to satisfy the *Twombly* standard for several reasons: (1) Plaintiffs do not adequately allege that SMA ever joined the alleged conspiracy; (2) Plaintiffs' allegations against SMA amount, at most, to allegations of lawful independent conduct; (3) Plaintiffs do not allege why SMA is unprotected by the Capper-Volstead Act, which legalizes agreements among entities such as SMA and DFA; (4) Plaintiffs' vague allegations regarding "Defendants" in general do not state a claim against SMA; and (5) Plaintiffs fail to allege with any specificity or factual support that the market for the sale and marketing of raw milk has been foreclosed.  Accordingly, Plaintiffs' Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### A.    Plaintiffs' Specific Allegations Against SMA are Insubstantial

Plaintiffs have alleged in their Complaint insubstantial and few, if any, details about SMA's involvement in the alleged illegal conspiracy.  Throughout the Complaint, Plaintiffs vaguely allege that "Defendants" generally conspired to commit various wrongs, but rarely, if

ever, specify whether SMA is alleged to have been involved in the specified conduct. (*See e.g.*, Compl. ¶¶ 1-2, 42, 51-60.)

As to SMA, the crux of Plaintiffs' specific allegations is as follows:

- Defendants have used the full-supply agreements between Dean and DFA "to force previously independent dairy farmers to join DFA or to market their Grade A milk through DFA-controlled entities in order to gain access to Grade A milk bottling plants" in the Southeast. (*See e.g.*, Compl. ¶¶ 2b, 42, 47, 51, 53.)

- Because "DFA-controlled marketing entities, such as DMS and SMA, and other co-conspirators market nearly all of the Grade A milk produced and processed in the Southeast," they can "monitor the prices paid to all dairy farmers by each of the processing Defendants—Dean, NDH, and DFA." (*See e.g.*, Compl. ¶¶ 2f, 55, 58, 60.)

- Defendants have used the information obtained by DFA-controlled marketing entities, such as DMS and SMA, "to fix and stabilize over-order premiums . . . at levels lower than what would have prevailed in a competitive market" with "the purpose and effect of depressing over-order premium prices paid to Southeast dairy farmers and cooperative members." (*See e.g.*, Compl. ¶¶ 2e, 52, 55, 58.)

- "Southeast dairy farmer members have been subjected to anti-competitive and unlawful fees and dues charged by SMA and other co-conspirators for the sole benefit of the cartel and to the detriment of Southeast dairy farmers." (Compl. ¶ 55.)

As to SMA, Plaintiffs do *not* specifically allege:

- When or where SMA joined the alleged conspiracy;

- SMA ever met with any of the alleged co-conspirators in furtherance of the conspiracy;

- SMA entered into any full-supply agreements with any Defendants or co-conspirators;

- SMA (as opposed to DFA) illegally forced or attempted to force independent farmers to join and market their milk through DMS or SMA;

- SMA illegally cut off or threatened to cut off independent dairy farmers' access to fluid Grade A milk bottling plants

- SMA boycotted independent dairy farmers;

- SMA "punished" independent dairy farmers that failed to comply with the alleged conspiracy; or

- SMA purchased fluid Grade A milk bottling plants.

As discussed below, Plaintiffs' wholly insubstantial allegations about SMA fail to state a claim for conspiracy, and cannot be transformed into a claim for conspiracy merely by lumping SMA into vague claims regarding "Defendants" as a whole.

### B. *Twombly* Sets the Standard for Pleading in This Case

The Supreme Court recently held in *Bell Atlantic Corp. v. Twombly* that Federal Rule of Civil Procedure 8 requires a plaintiff to plead sufficient facts to state a claim for relief that is *plausible* on its face and not merely possible or speculative. 127 S. Ct. at 1965-66. The *Twombly* Court reversed a circuit court's holding that plaintiffs had stated a Sherman Act conspiracy claim where the plaintiffs had not alleged the "specific time, place, or person involved in the alleged conspiracies," but rather alleged parallel conduct by the defendants and combined these factual allegations with a general allegation that the defendants had illegally conspired. *Id.* at 1971 n.10. Accordingly, "[t]o survive a motion to dismiss under *Twombly*, it is not enough to make allegations of an antitrust conspiracy that are consistent with an unlawful agreement; to be viable, a complaint must contain 'enough factual matter (taken as true) to suggest that an agreement [to engage in anticompetitive conduct] was made." *In re Elevator*

*Antitrust Litig.*, No. 06-3128-cv, 2007 U.S. App. LEXIS 21086, at *6 (2d Cir. Sept. 4, 2007) (*quoting Twombly*, 127 S. Ct. at 1974) (alteration in original).

The *Twombly* plaintiffs alleged that the defendants telecommunication companies, who were regional monopolists providing local telephone and high-speed internet services, worked together to thwart a federal statute intended to introduce competition into the formerly-regional monopolies. *Id.* at 1962. After the passage of the statute, each former regional monopolist did not attempt to enter into and compete in the others' territories. *Id.* Further, each former monopolist dealt unfairly with new companies attempting to provide competing services in their territories by providing the competitors with inferior connections to the phone networks, overcharging, and billing in ways designed to harm the relationships between the new competitors and their customers. *Id.* Based on the defendants' lack of competition with one another and the similar actions each took toward competitors, the plaintiffs alleged that defendants had agreed not to compete with one another and to prevent entry into their respective markets by competitors. *Id.* at 1962-63.

The Supreme Court held that the plaintiffs failed to state a plausible claim for conspiracy under these facts. The Court held that the plaintiffs must allege "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 127 S. Ct. at 1965. Thus, the Court held it was doubtful that plaintiffs would have satisfied the Court's pleading standard because the complaint "mentioned no specific time, place, or person involved in the alleged conspiracies." *Id.* at 1971 n.10.

Furthermore, the Court held that parallel conduct alone would not support a Sherman Act conspiracy claim when the alleged conduct "could just as well be independent action." *Id.* at 1965-66. The Court reasoned that each telephone company could have independent, self-

interested reasons for preferring not to compete in one another's zones of influence and for resisting competition with competitors. *See id.* at 1970-73. Thus, the challenged conduct alone did not state a plausible case for conspiracy as opposed to independent action. *Id.* at 1971. Even though the plaintiffs had directly alleged an agreement between the competitors, the Court held that such allegations were "merely legal conclusions resting on the prior allegations," and thus failed to state a claim for conspiracy. *Id.* at 1970. Thus, *Twombly* stands for the proposition that allegations of conduct that could just as well be lawful and independent do not by themselves state a claim for an antitrust conspiracy.

The *Twombly* Court placed its holding in the context of "the costs of modern federal antitrust litigation and the increasing caseload of the federal courts" which "counsel against sending parties into discovery when there is no reasonably likelihood that the plaintiffs can construct a claim from the events related in the complaint." *Id.* at 1967. To avoid cumbersome and unnecessary discovery, the Court reasoned that pleading deficiencies in antitrust cases must be exposed as early as possible and facially implausible antitrust complaints dismissed prior to the onslaught of discovery. *See id.*

## C. Plaintiffs Fail to Plausibly Allege that SMA Ever Joined an Illegal Conspiracy

Plaintiffs fail to bear their burden under *Twombly* to allege "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 127 S. Ct. at 1965. The Supreme Court in *Twombly* indicated that an antitrust plaintiff fails to state a plausible claim for conspiracy if it does not specifically allege facts regarding the specific time, place, and persons involved in the conspiracy. 127 S. Ct. at 1071 n.10; *see also In re Elevator Antitrust Litig.*, 2007 U.S. App. LEXIS 21086, at *8-9 (dismissing plaintiffs' complaint because the complaint alleged only conclusory allegations of an agreement to conspire—"the complaint enumerates 'basically

every type of conspiratorial activity that one could imagine . . . . The list is in entirely general terms without any specification of any particular activities by any particular defendant; it is nothing more than a list of theoretical possibilities, which one could postulate without knowing any facts whatever.'"); *Estate Constr. Co. v. Miller & Smith Holding Co.*, 14 F.3d 213, 221 (4th Cir. 1994) (complaint failed to state Sherman Act conspiracy claim where it did not allege "communications, meetings, or other means through which one might infer the existence of a conspiracy").

Sixth Circuit law even prior to *Twombly* required that plaintiffs plead specific facts to support an allegation of conspiracy in antitrust cases. For example, in *Ezzo's Investments, Inc. v. Aveda Corp.*, the plaintiff, a salon, alleged that a manufacturer of hair products and a wholesaler had conspired with one another to refuse to sell hair products to the plaintiff because of the plaintiff's discounting practices. 238 F.3d 420 (Table), No. 99-6489, 2000 WL 1888677, at *3 (6th Cir. Dec. 19, 2000). The Sixth Circuit held that the plaintiff failed to state a claim for conspiracy under the Sherman Act because the plaintiff "put forward no evidence suggesting either that [the manufacturer] had any communication with" the wholesaler concerning the salon's discounting practices, "or that [the manufacturer] was involved with, or even aware of" the wholesaler's decision not to sell to the plaintiff. *Id.*

As in *Twombly* and *Ezzo's Investments*, Plaintiffs have failed to allege facts that plausibly set forth that SMA ever joined into an illegal agreement. As in *Twombly*, Plaintiffs have not alleged a specific time that SMA supposedly entered into an illegal conspiracy; a specific place where it supposedly entered into such a conspiracy; and even which specific entities and individuals SMA is alleged to have conspired with. As in *Ezzo's Investments*, Plaintiffs have not even alleged that SMA met or corresponded with its alleged co-conspirators in furtherance of the

conspiracy. As in *Twombly* and *Ezzo's Investments*, Plaintiffs' bald allegations of conspiracy do not state a claim against SMA.

### D. Plaintiffs Have, at Most, Alleged Independent Conduct by SMA

At most, Plaintiffs have alleged lawful, independent conduct by SMA. *Twombly* holds that allegations of independent parallel conduct, standing alone, fail to state a claim, as parallel conduct "mirrors the ambiguity of the behavior: consistent with conspiracy, but just as much in line with a wide swath of [independent] rational and competitive business strategy." *Twombly*, 127 S. Ct. at 1964. The Court explicitly connected this rationale with its previous holding that, at the summary judgment stage, "plaintiffs' offer of conspiracy evidence must tend to rule out the possibility that defendants were acting independently." *Id.* (*citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)). The *Twombly* Court, therefore, held that plaintiffs failed to state a claim where there was "no reason to infer that the [defendants] had agreed to do among themselves what was only natural anyway." 127 S.Ct. at 1971. As in *Twombly*, the conduct alleged against SMA is simply suggestive of independent conduct and, thus, fails to support a claim for conspiracy.

Plaintiffs' specific allegations about SMA amount to: (1) SMA accepts as members cooperatives whom other entities, such as DFA and Dean, have allegedly coerced into joining SMA; (2) SMA monitors and markets the amount of milk produced by its members and the prices of milk paid to its members by processors, like DFA, Dean, and NDH; and (3) SMA charges its members fees and dues for its role in collectively marketing, arranging for transportation, and handling their milk.

None of these allegations indicate anything more than natural, independent behavior by SMA. As for the allegations about SMA's membership, it is natural and in no way indicative of

a conspiracy for SMA to accept new members and to seek to expand its membership. As for the allegations about monitoring the amount of milk sold and the amount of money paid to its members, Plaintiffs have identified a feature, not a flaw—in order to function effectively as a collective marketing agency, SMA naturally tracks information related to sales of milk by its members. As for the allegations about fees and dues, in order to collectively market, arrange for transportation, and handle the milk produced by its members in the Southeast market, SMA must naturally charge minimal fees and dues.

### E. Plaintiffs Have Not Met the Burden of Pleading Required by the Capper-Volstead Act

Even if Plaintiffs are assumed to have alleged that SMA entered into an agreement in restraint of trade, Plaintiffs still have failed to state a claim because they do not allege facts that place such an agreement outside the protection of Capper-Volstead antitrust immunity. The Capper-Volstead Act allows entities like DFA and SMA to make agreements among themselves regarding the sale, handling, and marketing of their milk, activities which, admittedly, would ordinarily violate antitrust laws. 7 U.S.C. § 291; *see generally, Dairymen, Inc.*, 660 F.2d at 194.

Given the broad protection Congress has afforded to dairy market participants such as SMA, Plaintiffs must specifically allege facts that show that SMA's alleged conduct is not immunized by Capper-Volstead—simply alleging that SMA made agreements with protected entities such as DFA will not suffice. Plaintiffs have not, for example, alleged that SMA engaged in specific predatory acts so as to lose Capper-Volstead immunity. Nor have Plaintiffs alleged that SMA itself conspired with non-exempt entities. As in *Twombly*, Plaintiffs have alleged apparently lawful behavior by SMA—behavior which is immunized by Capper-Volstead—and have tacked on a conclusory allegation of unlawful conspiracy. As in *Twombly*, Plaintiffs bear the burden of showing that SMA's acts were the product of an unlawful

conspiracy—a conspiracy that is unprotected by Capper-Volstead. Because Plaintiffs have failed

to satisfy this burden, Plaintiffs fail to state a claim upon which relief can be granted.

**F.      Plaintiffs' Generalized Allegations About "Defendants" are Not Sufficient to State a Claim Against SMA**

Plaintiffs cannot avoid the consequences of their failure to plead specific facts against

SMA by pointing to vague allegations sprinkled throughout the Complaint regarding conduct

allegedly committed by "Defendants."   Under Sixth Circuit law, *"each* defendant . . . has the

right to know what he . . . is alleged to have done which made him . . . a part of the conspiracy."

*Vermilion Foam Products Co. v. General Electric Co.*, 386 F. Supp. 255 (E.D. Mich. 1974)

(emphasis added).

In a persuasive case on point from the D.C. Circuit, *Jung v. Association of American*

*Medical Colleges*, a district court for the District of Columbia dismissed antitrust claims against

certain individual defendants based on the failure of the plaintiffs to adequately allege specific

facts joining them to the larger conspiracy.  300 F. Supp. 2d 119 (D.D.C. 2004).  The plaintiffs

argued that allegations about "defendants" as a group, because the individual defendants were

included in that category, sufficed to state a claim against the individual defendants.  *Id.* at 163-

64.  The court rejected this view, holding, "Plaintiffs cannot escape their burden of alleging that

each defendant participated in or agreed to join the conspiracy by using the term 'defendants' to

apply to numerous parties without specific allegations as to [each defendant]."   *Id.* at 163.

"Although the Court must consider defendants' motions to dismiss in the context of the larger

conspiracy," the *Jung* court continued, "plaintiffs are not relieved from alleging that each

individual defendant joined the conspiracy and played some role in it."  *Id.* at 164.

Plaintiffs have failed to allege enough specific facts about SMA to independently state a

claim.   As in *Jung*, Plaintiffs have incorporated SMA into vague allegations of conspiracy

regarding "Defendants" in general. The result here should be the same as it was in *Jung*: Plaintiffs' allegations against "Defendants" as a whole fail to state a claim for conspiracy against SMA and, therefore, must be dismissed.

**G.    Plaintiffs Have Not Alleged a Plausible Claim that the Market is Foreclosed**

Plaintiffs have alleged that Dean, NDH, and DFA agreed that all Grade A milk supplied to Dean, NDH, and DFA's fluid Grade A bottling plants must be marketed by DFA or through marketing entities, such as SMA or DMS, which are alleged, throughout the Complaint, to be controlled by DFA. (*See e.g.*, Compl. ¶¶ 2b, 42, 47, 51, 53.) Yet, conspicuously absent from Plaintiffs' claims of market foreclosure are any allegations that the market was in fact foreclosed, that Plaintiffs themselves offered a lower price for their milk, better service, more volume, etc., and that all such offers were refused. *See Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1058-60 (8th Cir. 2000) ("The principle criteria used to evaluate the reasonableness of a contractual arrangement include the extent to which competition has been foreclosed in a substantial share of the relevant market, the duration of any exclusive arrangement, and the height of entry barriers."). In other words, even accepting as true for purposes of this motion that independent dairy farmers and their cooperatives had to join SMA in order to sell their milk to Dean, DFA, or NDH in Orders 5 and 7, every exclusive contract necessarily excludes some potential sellers. However, nowhere do Plaintiffs allege that they offered a better price or were precluded from competing as a result of these allegedly exclusive arrangements between SMA and the other Defendants. Nor do Plaintiffs allege that there truly existed any market foreclosure, given that, by their own allegations, they were free to join SMA and market to Dean, DFA, and NDH pursuant to the same arrangement. These broad and conclusory allegations of collusion and conspiracy contained in Plaintiffs' Complaint hardly provide the basis for an

argument for market exclusion or foreclosure, especially in light of the broad immunities provided by federal law under the Capper-Volstead Act.

Further absent from Plaintiffs' Complaint are any allegations that SMA itself entered into the alleged agreement to coerce cooperative members to join SMA or that SMA itself entered into an agreement with Dean, DFA, or NDH to foreclose access to milk bottling plants owned and operated by both Defendants. Rather, Plaintiffs acknowledge that SMA is a marketing agency in common, a cooperative of cooperatives. As discussed above, actions taken by SMA relating to the marketing and pricing of its members' milk are all federally regulated and protected activities. Insofar as Plaintiffs are alleging a vertical conspiracy between processors, producers, and "marketers," such as SMA, Plaintiffs' Complaint completely fails to allege the who, when, where, and how these parties entered into the alleged anticompetitive agreements. Indeed, it makes no sense that SMA, which is in the business of marketing and handling milk, would seek to do anything other than maximize the prices paid to its member cooperatives by the processors. In light of this logical reality, Plaintiffs' allegations are not "economically plausible," which means their burden is even that much higher to plead the specificity required in this circuit and under U.S. Supreme Court precedent.

### III.    Plaintiffs Have Not Alleged that SMA Possesses Unlawful Monopsony or Monopoly Power

Counts Two and Three of the Complaint should be dismissed as to SMA because Plaintiffs do not allege that SMA possesses unlawful monopoly or monopsony power. (Compl. ¶¶ 79-85 (Count II alleging unlawful monopoly against DFA), ¶¶ 86-94 (Count III alleging unlawful monopsony against DFA, Dean, and NDH).) Count Two alleges only that DFA possesses an unlawful monopoly and thus seeks damages only against DFA. (Compl. ¶¶ 79-85.) Likewise, Count Three alleges only that Dean, or alternately Dean, NDH, and DFA collectively,

possesses unlawful monopsony power and seeks damages only from those three defendants. (Compl. ¶¶ 86-94.)  Because Plaintiffs have failed to name or seek relief against SMA, Counts Two and Three should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) with regard to SMA.

## CONCLUSION

In light of the foregoing discussions, Plaintiffs have demonstrably failed to plead any legally cognizable cause of action against SMA for the following two reasons:  (1) the Capper-Volstead Act immunizes from antitrust liability SMA's efforts in the marketing and handling of its member cooperatives' raw milk; and (2) pursuant to *Twombly*, Plaintiffs have failed to plead any facts with sufficient specificity to give rise to even a *plausible* claim for relief under either Section 1 or Section 2 of the Sherman Act against SMA.  For the reasons stated in this Motion, Defendant Southern Marketing Agency, Inc. respectfully requests this Court to dismiss Plaintiffs' Complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).

Dated: October 15, 2007

Respectfully submitted,

SOUTHERN MARKETING AGENCY, INC.

By: /s/ Craig V. Gabbert, Jr.
      Craig V. Gabbert, Jr.

      HARWELL HOWARD HYNE
      GABBERT & MANNER P.C.
      Craig V. Gabbert, Jr.
      315 Deaderick Street, Suite1800
      Nashville, Tennessee 37238-1800
      Telephone: (615) 256-0500
      Facsimile: (615) 251-1059
      Email: cvg@h3gm.com

WINSTON & STRAWN LLP
W. Gordon Dobie (*admitted pro hac vice*)
Kari M. Rollins  (*admitted pro hac vice*)
35 West Wacker Drive
Chicago, Illinois 60601
Telephone: (312) 558-5600
Facsimile:  (312) 558-5700

WINSTON & STRAWN LLP
Dan K. Webb (*of counsel*)
35 West Wacker Drive
Chicago, Illinois 60601
Telephone: (312) 558-5600
Facsimile:  (312) 558-5700

*Attorneys for Southern Marketing Agency, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on October 15, 2007, I caused a copy of the attached **Defendant Southern Marketing Agency, Inc.'s Memorandum of Law in Support of Its 12(b)(6) Motion to Dismiss Plaintiffs' Complaint For Failure to State a Claim Upon Which Can Be Granted** to be electronically served through the Electronic Filing System for the Eastern District of Tennessee upon the parties' counsel of record, as follows:

*Alphabetically by firm*

### *Plaintiffs' Counsel*

**James J. Pizzirusso, Esq.**             jpizzirusso@cmht.com
**Michael D. Hausfeld, Esq.**            mhausfeld@cmht.com
COHEN, MILSTEIN, HAUSFELD & TOLL
1100 New York Avenue NW
Suite 500 West Tower
Washington, D.C. 20005-3934

**Thomas C. Jessee, Esq.**               jjlaw@jesseeandjessee.com
JESSEE & JESSEE
P.O. Box 997
Johnson City, TN 37605

### *Defendants' Counsel*

**Paul H. Friedman, Esq.**               paul.friedman@dechert.com
**Paul T. Denis, Esq.**                  paul.denis@dechert.com
DECHERT LLP
1775 I Street, NW
Washington, DC 20006-2401

**Paul S. Davidson, Esq.**               paul.davidson@wallerlaw.com
**Lea Carol Owen, Esq.**                 carol.owen@wallerlaw.com
WALLER LANSDEN DORTCH & DAVIS, LLP
511 Union Street, Suite 2700
Nashville, TN 37219

*Attorneys for Dean Foods Co.*

**Jerry L. Beane, Esq.**　　　　　　　　　jerrybeane@andrewskurth.com
**Kay Lynn Brumbaugh, Esq.**　　　　　Kaylynnbrumbaugh@andrewskurth.com
ANDREWS KURTH LLP
1717 Main Street, Suite 3700
Dallas, TX 75201

**Robert L. Trentham, Esq.**　　　　　　rtrentham@millermartin.com
**Taylor B. Mayes, Esq.**　　　　　　　tmayes@millermartin.com
MILLER & MARTIN, LLP
150 Fourth Avenue, N
1200 One Nashville Place
Nashville, TN 37219-2433

*Attorneys for National Dairy Holdings, L.P.*

**Steven R. Kuney, Esq.**　　　　　　　skuney@wc.com
**John E. Schmidtlein, Esq.**　　　　　jschmidtlein@wc.com
WILLIAMS & CONNELLY
725 12th Street, NW
Edward Bennett Williams Building
Washington, D.C.  20005

**H. Buckley Cole, Esq.**　　　　　　　hbc@gdm.com
GREENEBAUM, DOLL & MCDONALD, PLLC
315 Deaderick Street, Suite 1425
Nashville, TN  37238

*Attorneys for Dairy Farmers of America, Inc., Dairy Marketing Services, LLC,
and Mid-Am Capital LLC*

/s/　　　Craig V. Gabbert, Jr.　　　　
Craig V. Gabbert, Jr.