IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | | |
|---|---|---|
| IN RE: SOUTHEASTERN MILK ANTITRUST LITIGATION | ) ) ) ) ) | MDL No. 1899 |
| | | Master File No. 2:08-MD-1000 |
| THIS DOCUMENT RELATES TO: ALL CASES | ) ) ) ) | Judge J. Ronnie Greer Magistrate Judge Dennis H. Inman |

**MEMORANDUM OPINION AND ORDER**

In this multidistrict antitrust case, defendant National Dairy Holdings, L.P. ("NDH") moves, pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, to dismiss the complaint for lack of *in personam* jurisdiction. After reviewing the record, the Court concludes that the motions are not well taken and will be DENIED.

**I. Standard of Review**

Plaintiffs bear the burden of demonstrating that personal jurisdiction exists. *Youn v. Track, Inc.*, 324 F.3d 409, 417 (6th Cir. 2003); *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002); *Third National Bank v. WEDGE Group, Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989). A district court may decide whether to rule on the jurisdictional issue upon a full trial record, after an evidentiary hearing, or merely on the basis of a written record. *Welsh v. Gibbs*, 631 F.2d 436, 438-39 (6th Cir. 1980). This matter has been fully briefed by the parties and voluminous affidavits

and exhibits have been filed. There is no need for an evidentiary hearing in this matter and the motion will be decided upon the record.

When a court decides the issue on the basis of affidavits alone, plaintiff need only make a *prima facie* case of jurisdiction. To survive a motion to dismiss, thus, plaintiffs need only "demonstrate facts which support a finding of jurisdiction." *Welsh*, 631 F.2d at 438 (quoting *Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977)). The burden on plaintiffs is relatively slight. The court considers the pleadings and affidavits in the light most favorable to the plaintiffs. Dismissal under Rule 12(b)(2) is proper only if the specific facts alleged by plaintiffs, taken as a whole, fail to state a *prima facie* case for personal jurisdiction. *Bridgeport Music, Inc. v. Still N The Water Pub.,* 327 F.3d 472, 478 (6th Cir. 2003); *Neogen,* 282 F.3d at 887; *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000); *Kerry Steele, Inc. v. Paragon Indus.,* 106 F.3d 147, 149 (6th Cir. 1997); *Theunissen v. Matthews*, 935 F.2d 1454, 1458-59 (6th Cir. 1991); *Serras v. First Tennessee Bank Nat. Ass'n.*, 875 F.2d 1212, 1214-15 (6th Cir. 1989); *American Greetings Corp. v. Cohn*, 839 F.2d 1164, 1168-69 (6th Cir. 1988).

**II. Facts**

NDH has submitted the affidavit of Kathy Turner ("Turner") in support of its motion. Turner, the Executive Vice President and Chief Financial Officer of NDH, has

also been deposed pursuant to Rule 30(b)(6) as the corporate representative of NDH. The following facts come from the affidavit of Turner: NDH is a limited partnership organized in 2001 under the laws of the State of Delaware. NDH's principal place of business is in Dallas, Texas. Dairy Farmers of America, Inc.("DFA") owns fifty percent of NDH and NDH management(Allen Meyer) owns the remaining fifty percent. The general partner of NDH is Dairy Management, LLC, a Delaware limited liability company.

NDH owns subsidiary limited liability companies which own and operate dairy processing plants. Two of these wholly-owned subsidiaries of NDH conduct some business in Tennessee. UC Milk Company, d/b/a Goldenrod Dairy ("Goldenrod") is a Kentucky limited liability corporation with its principal place of business in Madisonville, Kentucky. Flav-O-Rich Dairies, LLC ("Flav-O-Rich") is a Delaware limited liability company with its principal place of business in London, Kentucky. Goldenrod and Flav-O-Rich each own and operate milk processing plants located outside of Tennessee; however, they each sell dairy products to local customers in Tennessee. NDH is the member manager of Goldenrod and Flav-O-Rich. Goldenrod and Flav-O-Rich maintain separate books from NDH and have separate marketing images from NDH. Goldenrod and Flav-O-Rich select the customers to whom they will sell in Tennessee, they determine the prices they will charge customers in

3

Tennessee, they determine the frequency of delivery of milk or other products they sell to customers in Tennessee and they determine the route structure of delivery trucks serving customers in Tennessee.

NDH does not manufacture, advertise or sell products in Tennessee; does not maintain a facility or office in Tennessee; is not qualified, authorized, licensed, or chartered to do business in Tennessee; does not have agents, servants, or employees living or working in Tennessee, has never had agents, servants, or employees regularly going into Tennessee to conduct business; has never maintained a bank account, telephone listing, post office box or mailing address in Tennessee; does not pay taxes to the State of Tennessee; does not own, lease or have interest in real property in Tennessee; does not act as a director, manager, trustee or other officer of any corporation organized under the laws of Tennessee or having a place of business within the state; and does not have an agent for service of process in Tennessee. Although NDH is the member manager of Goldenrod and Flav-O-Rich, NDH does not control the day-to-day operations of these subsidiaries. In conclusory fashion, NDH asserts that it does not conduct business in Tennessee.

Not surprisingly, plaintiffs paint an entirely different picture. Accusing NDH of "deliberate omissions"[1] of fact in its original motion, plaintiffs assert that the facts

---

[1] Although plaintiffs clearly allege that NDH's conduct in the submission of the instant motion is improper, the Court has no pending request for any sort of sanctions. This Court, however, is

show: NDH buys milk from Tennessee farms and takes title to this milk pursuant to NDH's full supply agreement with DFA; NDH's milk was processed at Chattanooga Dairy, LLC, NDH's wholly-owned subsidiary bottling plant in Tennessee, from October 2003 through May 2006; NDH's milk has been processed at Flav-O-Rich and UC Milk Company, NDH's wholly-owned subsidiary bottling plants in Kentucky, from 2001 to the present; and NDH sells dairy products produced by all three subsidiary dairies (Chattanooga Dairy, Flav-O-Rich and UC Milk) to stores in Tennessee, including the Pantry's stores, pursuant to its sales agreement with NDH.

In September, 2001, NDH negotiated and entered into a full supply agreement for milk marketed by DFA. All of the milk processed by Chattanooga Dairy, Flav-O-Rich and UC Milk is procured by NDH pursuant to the full supply agreement. The agreement, on its face, establishes that all rights and obligations under the agreement run between NDH and DFA. None of the dairies, including Chattanooga Dairy, have ever negotiated agreements for the supply of milk. All negotiations are handled by NDH.

---

constrained to agree with plaintiffs that NDH, in its original motion, supported by the affidavit of Kathy Turner, presented incomplete and misleading information. This Court also finds Turner's lack of personal knowledge regarding the full extent of NDH's contacts with Tennessee, as established by the transcript of her Rule 30(b)(6) deposition, disturbing. Whether or not Turner was personally aware of the requirements of Rule 30(b)(6) concerning her personal knowledge and her duty to make an adequate search of the defendants' records, the attorneys representing this defendant certainly were aware of the Rule's requirements. As a result, this Court is sorely tempted to completely disregard the affidavit of Turner and summarily deny NDH's motion. The Court has, instead, considered all of the affidavits and exhibits offered by the parties both in support of and in opposition to NDH's motion.

On October 3, 2003, NDH acquired Golden Gallon, LLC, a milk bottling plant in Chattanooga, Tennessee. On October 6, 2003, NDH assigned Golden Gallon's assets to Chattanooga Dairy, a limited liability company NDH formed. A limited liability agreement with Chattanooga Dairy designated NDH as manager of Chattanooga Dairy and explicitly provided that NDH, as manager:

> Shall have general and active management of the day to day business and affairs of Chattanooga Dairy and shall be authorized and directed to implement all orders, resolutions, and business plans adopted by NDH that do not violate applicable laws.

On October 16, 2003, NDH entered into an agreement to supply "Golden Gallon" brand dairy products to 138 of The Pantry's convenience stores, at least 50 of which were located in the State of Tennessee.[2] Under this agreement, NDH is responsible for delivering Golden Gallon dairy products to The Pantry's retail stores. All rights and obligations to perform the agreement run between NDH and The Pantry.

Pursuant to its agreement with The Pantry, NDH sold Golden Gallon dairy products processed at Chattanooga Dairy to The Pantry from October 16, 2003 until May 19, 2006, when NDH discontinued processing milk at Chattanooga Dairy.

---

[2] Turner, in her Rule 30(b)(6) deposition, testified that The Pantry has at least 50 stores in Tennessee. According to The Pantry's SEC findings, there were 90 stores. The exact number of stores is irrelevant.

Although NDH had assigned Golden Gallon's assets to Chattanooga Dairy, NDH explicitly retained all rights to the supply agreement with The Pantry. After Chattanooga Dairy discontinued processing milk, it continued to operate as a distribution center for dairy products, including Golden Gallon products NDH sells to The Pantry. Since Chattanooga Dairy discontinued processing milk, Flav-O-Rich has processed Golden Gallon dairy products that are supplied to The Pantry and Flav-O-Rich operates four distribution centers in Tennessee . From 2001 through mid 2007, more than $440 million of products processed at Chattanooga Dairy, Flav-O-Rich and UC Milk were sold in Tennessee.

NDH, while acknowledging that it is the member manager of its limited liability company subsidiaries that do business in Tennessee and that it has the legal right to manage the daily operations of its subsidiaries, argues that the day-to-day operations are actually conducted by the subsidiaries themselves. NDH asserts that NDH and its subsidiaries are separate legal entities, with NDH merely serving in its role as the parent entity with the normal level of oversight one would expect of a parent entity. NDH asserts that such parental oversight does not subject NDH to jurisdiction in Tennessee.

### III. Analysis and Discussion

This Court may exercise personal jurisdiction over NDH if it is authorized by

the law of the forum state (Tennessee) and otherwise consistent with the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Youn*, 324 F.3d at 417; *Neogen*, 282 F.3d at 888; *Neal v. Janssen*, 270 F.3d 328, 331 (6th Cir. 2001). The Tennessee long-arm statute, Tenn. Code Ann. § 20-2-214, extends personal jurisdiction to the full limit allowed by due process. Section 20-2-214(a)(1) provides, in relevant part, that nonresidents of Tennessee are subject to the jurisdiction of the Tennessee courts as to any action or claim for relief arising from the transaction of any business within Tennessee. Section 20-2-214(a)(6) further provides that nonresidents of Tennessee are subject to the jurisdiction of the Tennessee courts on any basis not inconsistent with the United States Constitution. The Tennessee long-arm statute is coterminous with the limits on personal jurisdiction imposed by the Fourteenth Amendment's Due Process Clause. *Bridgeport Music*, 327 F.3d at 477; *Neal*, 270 F.3d at 331; *Payne v. Motorists' Mutual Insurance Companies*, 4 F.3d 452, 455 (6th Cir. 1993); *Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 376-77 (6th Cir. 1968). Because the limits of personal jurisdiction under Tennessee law and the limits of personal jurisdiction as a matter of constitutional due process are identical, the two inquiries are merged. *Bridgeport Music*, 327 F.3d at 477.

The bedrock principle of personal jurisdiction due process analysis is that the non-resident defendant must have sufficient "minimal contacts" with the forum state

such that the maintenance of the suit there does not offend traditional motions of fair play and substantial justice. *International Shoe Co. v. Washington*, 326 U.S. 310, 316 145; *Youn*, 324 F.3d at 417. Minimum contacts exist when a defendant's conduct and connection with the forum state are such that the defendant "should reasonably anticipate being haled into court there." *World-Wide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 297 (1980). It is the quality of contacts, not the quantity of contacts, that is important. *Neal*, 270 F.3d at 332.

Due process requires that individuals have "fair warning" that a particular activity may subject them to the forum's jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985). Where a forum seeks to assert specific personal jurisdiction over an out of state defendant who has not consented to suit there, the "fair warning" requirement is satisfied if the defendant purposefully directed its activities at a forum resident.

For there to be sufficient minimum contacts, the defendant must purposefully avail itself of the privilege of conducting business within the forum state, thereby invoking the benefits and protections of the forum state's laws. *Burger King*. 471 U.S. at 475. The minimum contacts requirement is satisfied if the defendant purposefully directs its activities at residents in the forum state, and the litigation results from alleged injuries that arise out of or relate to those activities. *Id.* at 472.

Purposeful availment by the defendant of the privilege of acting in, or causing a consequence in, the forum state is the *sine qua non* for *in personum* jurisdiction. *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1273 (6th Cir. 1998); *Southern Machine*, 401 F.2d at 381-82.

The purposeful availment test insures that a defendant will not be unreasonably haled into a forum solely as a result of random, fortuitous, or attenuated contacts, or as a result of the unilateral activity of another party or a third person. *Burger King*, 471 U.S. at 475; *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770 (1984); *Youn*, 324 F.3d at 417; *Neogen*, 282 F.3d at 889. Even a single act by a defendant deliberately directed toward a Tennessee resident that gives rise to a cause of action can support a finding of purposeful availment and meet the due process requirement of minimum contacts. *McGee v. Int'l Life Ins. Co.*, 325 U.S. 220, 223 (1957); *Youn*, 324 F.3d at 419; *Neal*, 270 F.3d at 1331.

The courts distinguish between general jurisdiction and specific jurisdiction, either one of which is an adequate basis for personal jurisdiction. *Burger King*, 472 U.S. at 472, 473 n.15; *Youn* 324 F.3d at 417-18. The court has general jurisdiction over a defendant when the defendant's contacts with the forum state are so "continuous and systematic" that the state may exercise jurisdiction over the defendant, even though the cause of action does not relate to those specific contacts

with the state. *Youn*, 324 F.3d at 417-418. Specific jurisdiction exists when a court exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's specific contacts with the forum state. *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8 (1984).

Consistent with constitutional due process, the Sixth Circuit has established a three part test for determining whether a federal court may exercise specific personal jurisdiction: (1) the defendant must purposefully avail itself of the privilege of acting or causing a consequence in the forum state; (2) the plaintiff's cause of action must arise from the defendant's activities in the forum state; and (3) the defendant's acts or the consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. *Youn*, 324 F.3d at 418; *Neal*, 270 F.3d at 332; *Southern Machine*, 401 F.2d at 381. This is commonly referred to as the *Southern Machine* test.

Personal jurisdiction cannot be avoided merely because a defendant does not physically enter Tennessee. *Southern Machine*, 401 F.2d at 382. "Physical presence" in the forum state "is not the touchstone of personal jurisdiction." *Neal*, 270 F.3d at 333. So long as the defendant's actions and efforts are purposefully directed toward Tennessee, the absence of the defendant's physical presence from the state cannot defeat personal jurisdiction in this forum. *Burger King*, 471 U.S. at 476.

When the first two elements of the *Southern Machine* test are met, an inference arises that the third element, fairness, is also present. *Compu Serve v. Patterson,* 89 F.3d 1257, 1268 (6th Cir. 1996); *First National Bank v. J.W. Brewer Tire Co.*, 680 F.2d 1123, 1126 (6th Cir. 1982); *Southern Machine*, 401 F.3d at 384. Where the first two criteria are satisfied, "only the unusual case will not meet this third criterion." *Aristech Chemical Intern. v. Acrylic Fabricators,* 138 F.3d 624, 628 (6th Cir. 1998) (quoting *Theunissen*, 935 F.2d at 1461). Defendant must present a "compelling case" that the presence of some other considerations would render personal jurisdiction unfair or unreasonable. *Burger King*, 471 U.S. at 477.

To determine whether the exercise of personal jurisdiction over the defendant is fair and reasonable, the court balances four factors: (1) the burden on the defendant; (2) the interest of the forum state (Tennessee); (3) the plaintiff's interest in obtaining relief; and (4) the interest of other states in securing the most efficient resolution of the controversy. *Asahi Metal Indus. Co., Ltd. v. Superior Court,* 480 U.S. 102 (1987).

Based upon the record before the Court in this case, this Court concludes that the Court has both general and specific jurisdiction over NDH.

### 1. General Jurisdiction

As noted above, the court has general jurisdiction over a defendant when the defendant's contacts with the forum state are "continuous and systematic". Plaintiffs,

of course, have the burden of proving that NDH's contacts with Tennessee are so "continuous and systematic" that the court may exercise jurisdiction. While NDH argues that plaintiffs have failed to allege any facts to show that NDH has any contacts with Tennessee, much less continuous and systematic contacts, the record establishes otherwise and this Court finds that the plaintiffs have met their burden of showing the existence of general jurisdiction.

While it is true, as NDH asserts, that NDH does not maintain an office or facility in Tennessee, does not advertise or manufacture products in Tennessee, has not been qualified, authorized, licensed or chartered to do business in Tennessee, has no agents, servants or employees living or working in Tennessee, does not maintain any bank account or telephone listing in Tennessee, pays no taxes to the State of Tennessee , does not maintain a post office box in the State of Tennessee, and does not have an agent for service of process in Tennessee, these facts are not dispositive and do not present a full picture. The record in the case establishes that NDH has purchased milk produced in Tennessee and has systematically sold dairy products in Tennessee on a continuous and substantial basis.

NDH, somewhat inexplicably, continues to argue that even though its supply agreement with DFA provides that title to the milk purchased in Tennessee is vested in NDH itself, NDF does not do business in Tennessee because the milk is

actually delivered to and processed by processing plants owned by NDH subsidiaries. Similarly, NDH continues to maintain that it does not sell dairy products to The Pantry stores despite the clear language of the agreement between NDH and The Pantry, Inc. That NDH uses subsidiaries to fulfill *its* contractual obligations is irrelevant and the position of NDH in this regard is almost nonsensical. It defies logic to conclude that NDH can itself contract for the purchase of milk and the sale of dairy products in the State of Tennessee and then avoid an exercise of jurisdiction by the Tennessee courts by using wholly owned subsidiaries to fulfill its contractual obligations. A review of the agreements clearly establishes that NDH itself is the purchaser of milk pursuant to the DFA contract and that NDH takes title to the milk purchased. That the milk is delivered to a subsidiary is totally irrelevant. Likewise, it is NDH itself which is obligated to provide dairy products to the Pantry stores in Tennessee. Once again, that it uses subsidiaries to accomplish its contractual obligations is irrelevant.

### 2. Specific Jurisdiction

This Court, likewise, has specific jurisdiction over the defendant. As set forth above, the Sixth Circuit has developed a three part test for determining whether a federal court may exercise specific personal jurisdiction over a defendant. All three elements of the *Southern Machine* test are met here.

NDH argues that it does not have sufficient minimum contacts with Tennessee

and has not purposefully availed itself of the privilege of acting or causing a consequence in Tennessee. Plaintiffs argue that NDH purposefully availed itself for the privilege of acting in Tennessee by buying milk from Tennessee farms and knowingly selling dairy products in Tennessee, by intentionally directing tortious conduct at Tennessee and by controlling Chattanooga Dairy, Flav-O-Rich and US Milk such that their contacts with Tennessee are imputed to NDH. NDH responds, once again, by alleging that it has sold no dairy products in Tennessee nor bought any milk from Tennessee farms. These contentions on the part of NDH have been dealt with above.

Purposeful availment exists when a defendant's contacts with the forum "proximately result from actions by the defendant himself to create a 'substantial connection' with the forum state," and when the defendant's conduct and connection are such that it "should reasonably anticipate being haled into court there." *See CompuServe*, 89 F.3d at 1263. Even if it could be logically argued, as NDH suggests, that NDH has not itself purchased milk from Tennessee farms or sold dairy products in Tennessee, it cannot be said that NDH has not taken title to such milk and has not availed itself of the privilege of acting or <u>causing a consequence</u> in Tennessee by entering into the contracts referenced above with DFA and The Pantry, Inc. Defendant has knowingly entered into contracts which have caused consequences in

15

Tennessee creating a substantial connection with Tennessee, and NDH should have reasonably anticipated being haled into court in Tennessee. Thus, this Court concludes that by entering into the agreements with The Pantry and DFA, NDH has purposefully availed itself of acting or causing a consequence in Tennessee.

Next, if the allegations of the complaint are true, and this Court accepts them as such for the purpose of ruling on the instant motion, plaintiffs' cause of action in this case arises from intentional tortious acts of NDH aimed at the State of Tennessee. NDA responds by referring to its supply agreement with DFA and making the conclusory statement that "[t]he supply agreement was not a communication purposefully directed into Tennessee." They also argue that the plaintiffs' complaints do not mention specific wrongful acts by NDH. NDH, once again, overlooks the allegation that NDH has violated the Sherman Act by conspiring to acquire and shut down bottling plants in the Southeast, such as the Chattanooga Dairy, and to fix prices paid to dairy farmers in the Southeast, including Tennessee, as alleged by the plaintiffs. That the Chattanooga Dairy is not specifically mentioned in the complaint is of no real consequence.

Finally, the *Southern Machine* test requires that the defendant's acts or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant

16

reasonable. As set forth above, when both the "purposefully avail" and "arising from" prongs of the *Southern Machine* test are met, as they are here, an inference arises that the third element is also present. Defendant must present a "compelling case" that the presence of some other considerations would render personal jurisdiction unfair or unreasonable.

Defendant has not done so here. In fact, NDH does nothing more than make conclusory allegations in this respect. NDH argues that it "would be substantially burdened by litigating this case in Tennessee, as it does not reside in or have a place of business in Tennessee". NDH does not further develop the argument, however, and certainly falls short of making a compelling case. Defendant has not submitted any facts or proof to demonstrate that requiring NDH to litigate this action in Tennessee would be unduly expensive or burdensome and no reason is apparent why it would not be fair and reasonable to require NDH to defend this action in a court in Tennessee. In addition, the State of Tennessee has a strong interest in providing a judicial forum to resolve a suit based on the allegations of intentional wrongdoing made in this complaint.

A considerable portion of the briefing of the parties on this motion has been directed toward the question of whether or not the contacts with Tennessee of the

wholly owned subsidiaries of NDH should be imputed to NDH for the purpose of establishing personal jurisdiction. It is not disputed that a parent/subsidiary relationship in and of itself does not create personal jurisdiction. NDH implicitly admits that its wholly owned subsidiaries do in fact have sufficient minimum contacts with the State of Tennessee to justify personal jurisdiction over those entities by Tennessee courts; however, NDH argues that there is no evidence of any "integrated business relationship" between NDH and its subsidiaries sufficient for exercising jurisdiction over the parent, *i.e*. NDH.

Given that the Court has found that an exercise of personal jurisdiction over NDH by this Court is not inconsistent with the Due Process Clause based upon the actions of NDH itself, the Court need not decide this question. The Court notes, however, that NDH has the undisputed right to the general and active management of the day-to-day business and affairs of its subsidiary in that it had the right, at any time, to directly assume control of the management and operation of its subsidiary. Even if it is true that NDH has not seen fit to directly assume such control, that only serves to tacitly suggest that NDH has <u>approved</u> of its subsidiaries' acts.

## IV. Conclusion

Accordingly, the defendant's motions pursuant to Federal Rule of Civil

Procedure 12(b)(2) to dismiss the plaintiffs' complaint on the ground of lack of personal jurisdiction is **DENIED**.

SO ORDERED.

ENTER:

<p style="text-align: right;">s/J. RONNIE GREER<br>UNITED STATES DISTRICT JUDGE</p>