# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
## GREENEVILLE DIVISION

| | | |
|---|---|---|
| IN RE: SOUTHEASTERN MILK | ) | |
| ANTITRUST LITIGATION | ) | |
| | ) | **Master File No. 2:08-MD-1000** |
| | ) | |
| **THIS DOCUMENT RELATES TO:** | ) | **Judge J. Ronnie Greer** |
| *Sweetwater Valley Farm, Inc., et al. v.* | ) | **Magistrate Judge Dennis H.** |
| *Dean Foods Co., et al., No. 2:07-CV 208.* | ) | **Inman** |
| | ) | |

## MEMORANDUM OPINION AND ORDER

On September 7, 2010, this Court granted in part the motion of plaintiffs for class certification and certified the class and two subclasses proposed by plaintiffs with respect to all of plaintiffs' claims except for the breach of contract claim against Dairy Farmers of America ("DFA"), [Doc. 934]. Pursuant to the Court's September 7 order, plaintiffs have moved for an order approving their proposed class notice plan, [Doc. 982]. The defendants have responded in opposition, [Doc. 1044], and have submitted a proposed alternative form of class notice, [Doc. 1143]. Oral argument was heard on November 9, 2010. For the reasons which follow, the motion will be GRANTED, and plaintiffs' class notice plan, as modified herein, is APPROVED. Class notice in the forms attached hereto as attachment 1 and 2 will be directed to prospective class members in the manner set forth in this order.

## I. Content of the Notice

For any class certified under Federal Rule of Civil Procedure 23:

> (B) *For (b)(3) Classes.* For any classes certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including

individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language:

**(i)** the nature of the action;

**(ii)** the definition of the class certified;

**(iii)** the class claims, issues, or defenses;

**(iv)** that a class member may enter an appearance through an attorney if the member so desires;

**(v)** that the court will exclude from the class any member who requests exclusion;

**(vi)** the time and manner for requesting exclusion; and

**(vii)** the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

As set forth in Rule 23, it is the duty of the Court to provide the best notice practicable to the members of the class. The initial notice to class members has the critical function of apprising class members of "accurate and impartial information regarding the status, purposes and effects of the class action." *Kleiner v. First National Bank of Atlanta*, 751 F.2d 1193, 1202 (11th Cir. 1985). The notice should include "an impartial recital of the subject matter of the suit, inform[ ] members that their rights are in litigation, and alert[ ] them to take appropriate steps to make certain their individual interests are protected." *Erhardt v. Prudential Group, Inc.*, 629 F.2d 843, 846 (2d Cir. 1980) (citing *In re Gypsum Antitrust Cases*, 565 F.2d 1123, 1125 (9th Cir. 1977); *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088 (5th Cir. 1977)). A significant duty of the court in determining the content of class notice is to protect against a misleading or one sided presentation of the facts. *Kleiner*, 751 F.2d at 1203; *In re School Asbestos Litig.*, 842 F.2d 671, 680 (3d Cir. 1988).

Plaintiffs propose to provide individual notice by U.S. Mail to about 7,500 Southeast dairy farmers, supplemental notice in two dairy industry trade publications widely circulated to dairy farmers, and a website and toll-free telephone number. Plaintiffs submit that such notice "easily satisfies Rule 23." Plaintiffs have submitted proposed notices modeled largely on the model forms of notice prepared by the Federal Judicial Center ("FJC") and posted on the FJC's website, www.fjc.gov.[1] Plaintiffs rely on the expert affidavits of Shannon R. Wheatman, Ph.D. ("Wheatman") in support of the adequacy of the proposed notices, [Docs. 982-1, 1081-1, 1145]. Wheatman, in sum, opines that the proposed notice "represents the best notice practicable under the circumstances."

Defendants, on the other hand, argue, not surprisingly, that the proposed notice does not meet the requirements of either due process or Rule 23. The defendants raise four primary objections to the content of the proposed notice: (1) the proposed notice fails to adequately describe the nature of the case and the effects any judgment rendered against DFA, Southern Marketing Agency, Inc. ("SMA"), or both would have on certain groups of class members; (2) the proposed notice fails to necessarily apprise the class members of the injunctive relief being pursued by plaintiffs and the effects the injunctive relief would have on certain groups of class members; (3) the proposed notice misleadingly suggests that class members may obtain additional information from neutral sources that are in reality controlled by class counsel; and (4) the proposed notice fails to provide an adequate explanation of the significance of the opt out decision, or adequate guidance to those farmers who chose to opt out. The Court will address each of defendants' objections in turn.

---

[1] Many courts have approved the basic form of these model forms in class action cases.

**A.     Description of the Nature of the Case/Effects of any Judgment Rendered On Class Members**

Two of the defendants in this case, DFA and SMA, are non-profit cooperative organizations whose dairy farmer members receive a pro rata share of all allocable revenues generated from the collective sale and marketing of the members' milk.  DFA members are dairy farmers and SMA's members are seven other cooperatives which are themselves composed of dairy farmer members.  Thus, the membership of DFA and of the cooperatives which comprise SMA in the Southeast are themselves likely members of the certified class.  As a result, DFA and SMA argue that this case involves a class "who are in substantial measure suing themselves."

They argue, therefore, that "it is critical that class member plaintiffs learn the *true nature* of the class action lawsuit."  More specifically, defendants propose informing the class members in the class notice that in the event plaintiffs win at trial or the case is settled, the money "will have to come from DFA dairy farmer members who are the owners of the cooperative."  They propose informing the class members that the money DFA would be required to pay "could be raised by reducing DFA members' milk checks, taking money out of their equity accounts, or selling off an asset that has helped to generate patronage payments for DFA members."  SMA also proposes to inform class members that, if SMA is required to pay,  "that money will have to come, in one form or another, from SMA's member cooperatives and from the dairy farmers that own and belong to those cooperatives, either through a reduction in the amount of profits that is [sic] passed back to the SMA member cooperatives, or by SMA assessing a per hundredweight fee on all members based upon their pro rata share (pounds of milk) in the SMA pool."

Plaintiffs respond to defendants' arguments by taking issue with the factual accuracy of DFA's and SMA's representations, they argue that defendants' proposed changes in the notice are

"designed to frustrate the class notice process and insure that it is ineffective," and suggest that defendants have engaged in a not too thinly disguised attempt to influence class members to opt out of the class, thereby reducing defendants' potential monetary liability in the case.

It is the duty of the Court to insure that individual decisions to opt out are independent and free from coercion. *Manual For Complex Litigation* ("*MCL*"), Fourth § 21.33 (2004). It is obviously in defendants' interest to diminish the size of the class and their potential liability and the communications suggested by defendants appear to the Court to be nothing more than an effort to influence class members to decide not to participate in the litigation. Although the precise issue has not been raised in the Sixth Circuit, at least one circuit has found similar communications with class members to be improper. *See Erhardt*, 629 F.2d at 845 (letters to class members warning them that they might be liable for costs if they remain in the litigation held improper).

Defendants have cited no precedent for the extraordinary communication they suggest with the class certified in this case. DFA and SMA liken the situation of their member dairy farmers, or, in SMA's case, member cooperatives made up of member dairy farmers, to class members who might be subjected to liability because of counterclaims asserted against the class. In such cases, "courts have ruled that the notice should provide an objective statement of both the claim and counterclaim so that an absentee would be informed that remaining in the action might subject the absentee to liability." *Wright, Miller & Kane, Federal Practice and Procedure*: Civil 3d § 1787. *See also Lessard v. Metropolitan Life*, 103 F.R.D. 608, 614 (D. Me. 1984) (where, if counterclaims successful, Metropolitan would "have in hand enforceable judgments against not only the named plaintiffs, but also against fifty-one others," court ordered "notice to the members of the class against whom counterclaims may be asserted . . . of the fact that a counterclaim will be asserted and of its

potential effect in the event of a decision adverse to the class.") These authorities are inapposite here. Success by plaintiffs in this case may result in enforceable judgments against Dean, DFA and/or SMA, but the action will not result in any enforceable money judgment against any individual DFA member, SMA member cooperative, or individual member of any SMA member cooperative.

Although the defendants dispute the comparison, the situation is not unlike that which exists in shareholder derivative litigation where a successful judgment against the corporation will potentially result in ultimate costs to some shareholders but not in a judgment against any individual shareholder. The fact that this case involves a cooperative rather than a corporation is a distinction without a difference. As the Sixth Circuit has noted, "there is no textual warrant [in Rule 23] for requiring a notice to lay out every reason a class member might object to the settlement." *International Union v. General Motors Corp.*, 497 F.3d 615, 630 (6th Cir. 2007). The same is equally true with respect to the decision of a class member to opt out of the litigation.

In sum, the Court finds that the request of DMA and SMA that class members be told that they are, in effect, "suing themselves" is inappropriate. Even if somewhat factually accurate, the request represents a blatant attempt on the part of DMA and SMA to encourage their members to opt out of the litigation, thereby reducing their potential monetary liability in this case. To allow such information to be placed in the class notice would simply turn the class notice into a forum for the parties to attempt to convince potential class members to either participate or not participate in this litigation. That clearly is not the purpose of the notice and, in fact, runs afoul of the clear directives to this Court that it should ensure a class notice with impartial information, free of misleading and coercive statements. Furthermore, since the class notice represents a class notice from the Court, the argument made by the defendants could be interpreted, and likely would be

interpreted, as an effort not just by the defendants but also by the Court to encourage them not to participate in the litigation. That is strictly improper.[2] *Philadelphia Elec. Co. v. Anaconda Am. Brass Co.*, 43 F.R.D. 452 (D. Pa. 1968).

### B.        Description of Injunctive Relief Sought/Possible Effect on Class Members

Plaintiffs seek several forms of injunctive relief. The parties argue extensively in their pleadings about the actual scope <u>and</u> effects of an award of injunctive relief on class members. Defendants argue that the proposed notice does not provide "an explanation in plain, unambiguous and practical terms [ ] the relief being requested in this lawsuit so that they can decide whether its achievement is in their interests." They cite, as an example, the demand of plaintiffs that the Court declare null and void "the full-supply agreements by and between" certain defendants described in the consolidated amended complaint ("complaint") and plaintiffs' request that various defendants be permanently enjoined "from entering into full-supply agreements" as described in the complaint. Defendants allege that DFA dairy farmers may find these agreements to be beneficial and disruptive of their ability to market their milk. Plaintiffs, of course, strenuously disagree.

These highly conflicting views of the effect on dairy farmers of any of the requested injunctive relief cannot be resolved through this motion. Moreover, defendants' position reflects a view that these dairy farmers are much less sophisticated and able to understand the effects of the relief sought by plaintiffs than the Court is willing to accept. The notice should, as agreed by all parties at oral argument, simply track the complaint in describing the injunctive relief sought by

---

[2]   In fact, because the Court must provide a neutrally drafted class notice, the Court will include a precautionary paragraph in the notice "stating that the recipient[s] should not interpret the notice as an expression by the Court as to the merits of the claims or defenses being asserted." *Wright, Miller & Kane*, § 1787.

plaintiffs. The complaint will be available to any potential class member by request to the clerk's office and online and the individual dairy farmers may draw their own conclusions about the potential effects of the relief sought, something they are perfectly capable of doing, and they may consult counsel of their choosing if they wish.

C.    **Explanation of the Opt Out Provision**

Defendants make two objections with respect to what the proposed notice has to say about class members' right to opt out of the class: (1) It does not explain the "potential ramifications of the decision to opt out of the class," and (2) it does not "provide an appropriate mechanism for dairy farmers to opt out of the class." Generally, defendants argue that the proposed notice's provisions about opting out are too long and complicated for the class members to pay attention to it and that the notice should include a removal request form and a prepaid and addressed envelope for farmers to use in mailing the request forms. Defendants cite no binding precedent, indeed, no precedent at all, in support of their position.

The proposed notice clearly explains, in simple language, that class members may remain in the class or opt out– if they do nothing, they "automatically remain in the class;" if they do not want to participate, they must act by sending a "letter that says you want to be removed from the Southeastern Milk Class." The defendants do not further develop their argument that such information is inadequate and fails to comply with the requirement of due process and Rule 23. Once again, it appears to the Court that the defendants seriously underestimate the intelligence and perceptive abilities of these dairy farmers. This argument is without merit.

As for the argument of defendants that a removal request form and a prepaid addressed envelope be provided, there appears to be no clear precedent on these issues. Rule 23 requires only

8

that "the court [ ] exclude from the class any member who requests exclusion," and that the notice describe the "time and manner" by which members may request exclusion. *Fed. R. Civ. P.* 23(c)(2)(B)(v)-(vi). "Mailing a written form to a claim administrator is [,however,] a common method for opting out of a class action . . ." and some courts have required a prepaid addressed envelope. *See Danieli v. IBM*, 2009 WL 6583144 (S.D. N.Y., Nov. 16, 2009); *In re Wal-Mart Stores, Inc. Wage and Hour Litig*., 2008 WL 1990806 (N.D. Cal., May 5, 2008); *Tierno v. Rite Aid Corp.*, 2007 WL 4166028 (N.D. Cal., Nov. 19, 2007). *See* also *MCL* 4th § 21.311 ("A simple and clear form for opting out is often included with the notice.") On the other hand, other courts have found the use of postage prepaid opt out forms to be "a solicitation to opt out that is coercive." *Cortez v. Nebraska Beef, Inc*., 2010 WL 5348795 (D.Neb., Dec. 21, 2010); *Sibley v. Sprint Nextel Corp*., 2009 WL 662630 (D.Kan. March 13, 2009); *Krzesniak v. Cendant Corp.*, 2007 WL 4468678 (N.D. Cal., Dec. 17, 2007). Plaintiffs do cite one court of appeals case, *Rittmaster v. PaineWebber Group, Inc.*, 147 F.3d 132 (2d Cir. 1998). *Rittmaster*, however, at best, stands only for the proposition that Rule 23 and due process are not violated when an opting out class member is required to pay his own postage. *Id.* At 136.

Given the lack of clear precedent and the circumstances of this particular case, the Court does not believe the form proposed by defendants can reasonably be viewed as a solicitation to opt out that is in any way coercive in the context presented here. The Court, therefore, will sustain the defendants' objection and will order the inclusion of the opt out form proposed by defendants. The Court declines, however, to order the inclusion of a postage prepaid return envelope since the address to which the opt out correspondence must be sent is set out clearly and unequivocally in the notice. Class members' ability to opt out will not be limited to use of the enclosed form, however,

but may be conveyed by any written transmission reasonably intended to convey their intention to opt out.[3]

### D. Definition of the Class

#### 1. Farmers Who Did Not Sell Milk to a Defendant

Here, defendants allege that "Plaintiffs' motion to approve the Proposed Notice suggests that they seek to serve the Proposed Notice on farmers who are not members of the class," referring to Ex. 2, ¶ 5 (detailed notice) of the affidavit of Shannon R. Wheatman, Ph.D. [Doc. 982-1]. More specifically, they argue that the proposed notice states that the class includes all dairy farmers residing in Orders 5 and 7. Frankly, the defendants' argument is lost on the Court. This Court previously defined the class as dairy farmers-whether individuals or entities-"who _produced_ Grade A milk within Orders 5 and 7 _and sold_ Grade A milk "to Defendants or co-conspirators in Orders 5 and/or 7." Plaintiffs' proposed notice defines the class consistently with the Court's definition.

Defendants do not further develop their argument here and simply argue that "plaintiffs should be require to state in greater detail their methodology for identifying these class members and should make sure the Proposed Notice describes the class in a manner consistent with the actual class definition." The Court's prior order, as amended by this order, clearly sets forth the definition of the class and the notice to class members sets forth the definition of the class in consistent terms. This Court simply declines the invitation of defendants to further delay this matter by requiring plaintiffs to explain the methodology they have used to develop the proposed mailing list, especially

---

[3] The Court notes that Rule 23 does not explicitly require the use of an opt out form and the FJC model notice, likewise, does not include such an opt out form. Neither of these factors is dispositive, however, because neither the Rule nor the model form contain a directive that such an opt out form should not be used.

given the voluminous discovery in this case and the very lengthy opportunity the parties have had to address this matter in discovery.

Plaintiffs do seek some relief beyond approval of the proposed notice in their motion. They also ask the Court to require the defendants to produce a list of potential class members "to insure uniformity and that the most Class members receive notice as practicable," citing the possibility that defendants possess a list of additional potential class members. Defendants, of course, oppose plaintiffs' request. Once again, plaintiffs have had a lengthy period of time through extensive discovery to address this issue. They have not, and they now seek, based upon the mere possibility that such a list may exist, to have defendants produce the list. Plaintiffs cite no authority that defendants are under such an obligation, especially at this point in the litigation, and the Court sees no basis for requiring defendants to expend the time and resources necessary to compile such a list.[4] Plaintiffs' request is DENIED.

## 2. Farmers in Leadership Positions with DFA or SMA

Defendants argue that the notice proposed by the plaintiffs, as well as the class definition previously certified by this Court, fails to clearly identify those excluded from the class. The class definition excludes from the class "Defendants and Co-Conspirators." More specifically, defendants argue that "defendants and the dairy farmer members of their respective boards of directors" and "dairy farmers who serve on the Boards and Councils (at the national, regional and local levels, of Defendants and Co-Conspirators" should be clearly excluded from the class certified. Defendants' objection identifies four specific groups which, defendants argue, should be excluded

---

[4] The Court likewise declines plaintiffs' request that it require the defendants to certify to the Court that they do not have such a list.

from the definition of the class contained in plaintiffs' proposed notice: (1) current dairy farmer board members of DFA and SMA who otherwise satisfy the criteria for class membership; (2) former dairy farmer board members of DFA and SMA who allegedly participated in the conduct at issue and who otherwise satisfy the criteria for class membership; (3) current and former dairy farmer board members of each of the constituent dairy cooperatives that comprise SMA who otherwise satisfy the criteria for class membership; and (4) regional and local dairy farmer representatives for each of the constituent dairy cooperatives that comprise SMA who otherwise satisfy the criteria for class membership.

Plaintiffs make a straightforward, twofold response. First they respond that the proposed notice "defines the class exactly how the Court certified it." Secondly, they point out that the various board members may simply opt out of the class if they desire.[5] Plaintiffs are correct on both counts and if this argument truly raised a simple question of adequacy of the notice, the Court would very easily dispose of the arguments raised by sustaining the plaintiffs' position.

It quickly became clear at oral argument, however, that the question is a more complicated one. Although defendants have not moved for a modification of the definition of the class certified, instead opting to argue that the notice misdefines the class, in reality the relief they seek through their objection to the proposed notice is a modification of the class definition. Rather than moving for modification, defendants have taken the disingenuous approach of arguing that the proposed notice is deficient because it "fails to identify with specificity those dairy farmers excluded from the

---

[5] Plaintiffs made a third response at oral argument on plaintiffs' motion. While acknowledging that former and current board members may have participated in the very decisions that are at issue here, plaintiffs nevertheless argue that neither the former board members nor the current board members had a "clue what was going on" and thus should not be excluded from the class. The present motion, however, does not provide an appropriate vehicle for resolution of that factual dispute.

class by virtue of the leadership positions they hold within defendants and/or co-conspirators." Nothing in the Court's prior order certifying the class in this case suggests an exclusion from the class of those with "leadership positions" with defendants or co-conspirators. In fact, as plaintiffs correctly pointed out at oral argument, defendants never even suggested such an exclusion from the class in their voluminous briefing of the class certification motion. For this reason alone, plaintiffs argue that defendants' objection should be overruled.

The Court is sorely tempted to agree with plaintiffs. However, for the sake of efficiency, the Court will consider defendants' objection as a motion to modify the definition of the previously certified class. As noted in the Court's November 2 order, the Court retains the authority to modify or even decertify the class at any time before final judgment, *Fed. R. Civ. P.* 23(c)(1)(c), and plaintiffs have raised a legitimate and substantial issue about the class definition. Although the issue could have been raised by defendants in a more timely and efficient fashion, it is an issue that must inevitably be resolved by the Court. It simply makes more sense to decide the matter now, without the filing and briefing of additional motions, and before class notice is given.

Although DFA and SMA exaggerate the nature of the issue, it is primarily one concerning communications between these cooperatives and their leadership, former or current, who are, or have been, charged with decision making authority.[6] And, while it is true that any of the persons who otherwise satisfy the class criteria may opt out, that is a somewhat inadequate response to the true problem. As defendants point out, "certification of a class usually results in a communication barrier between the two sides," [Doc. 1044, p. 21, fn. 10], and the rules governing communications

---

[6]   DFA and SMA also argue that these defendant cooperatives face a "paradigm" and "impossible scenario" by the class certification because it bars them from discussing the litigation with its own members.

apply as though each class member is a client of the class counsel, *In re School Asbestos Litig.*, 842 F.2d at 679-83, except that defendants may continue to communicate with class members in the ordinary course of business unrelated to the litigation. *See MCL*, 4th § 21.33. Thus, inclusion of those with policy making authority, *i.e.* officers and directors, within the definition of the class potentially hamstrings defendant cooperatives from communicating with those very decision makers who must make the ultimate decisions regarding the defense of this case, including issues related to litigation strategy and possible settlement.

This Court agrees with defendants that defendant cooperatives must have the unfettered ability to forthrightly communicate with their officers and directors who make, or have made, the business decisions of the cooperatives regarding this litigation and that the former and current officers and directors of DFA and SMA should be excluded from the class definition, regardless of whether they otherwise satisfy the class criteria. This eliminates any concern that defendants might be prohibited by ethical rules regarding contact with persons represented by class counsel from discussing matters related to the litigation with those who may be called upon to make ultimate decisions about the course of this litigation. It also eliminates any concern that current officers and board members who may gain if plaintiffs prevail will also be making decisions about how best to litigate–or settle–this case. *See George v. Kraft Foods Global, Inc.*, 251 F.R.D. 338 (N.D. Ill. 2008) ("The question presented here, however, is whether non-party defendants who are officers and directors as well as Plan participants have a conflict of interest that precludes them from participating in this class action. We think the best course is to exclude defendants' officers and directors from the class even though they are not named parties. That will eliminate any concern that officers and directors who may gain if plaintiffs prevail will also be making decisions for

14

corporate defendants as to how best to litigate–or settle–this case."). *See also Andrews Farms v. Calcot, Ltd.*, 268 F.R.D. 380 (E.D. Cal. 2010) (holding that an "irreconcilable conflict of interest exists between former board members and non-board members" and clarifying that "managing agents and officers" excluded from the class definition includes former board members.)

Defendants' request that a broader group be excluded, however, is not well taken. For instance, no good reason appears as to why current and former dairy farmer board members of the constituent dairy cooperatives that comprise SMA and who voted to approve their cooperative's membership in SMA, regional and local dairy farmer representatives for each of the constituent cooperatives that comprise SMA and others with "leadership" positions in DFA or SMA, such as members of DFA's southeast area council, should be excluded from the class. Nevertheless, the Court is sensitive to the unique structure of cooperatives composed of member dairy farmers who potentially have a voting say in the cooperatives' business decisions. The solution, if one is needed, however, is not further exclusion from the class but rather consideration by the Court of a subclass or subclasses of SMA member cooperatives for which the Court could permit limited, controlled communication with the defendants.[7]  *See* MCL 4th § 21.33. Such a determination cannot be made on the record before the Court but would necessarily be made only upon proper motion and showing that limited communication by a defendant is necessary.

### 3. Identification of "Presently Identifiable" Class

Members of the class defined are dairy farmers who produced Grade A milk within Orders 5 and 7 and sold Grade A milk to defendants or co-conspirators "from January 1, 2001 to the present." The defendants argue that the class definition improperly includes "unnamed and

---

[7]  A subclass composed of DFA members already exists.

unidentifiable future class members who may not yet exist" and seek modification of the class to "include only presently identifiable class members," citing *J.B.D.L. Corp. v. Wyeth-Ayerst Laboratories, Inc.*, C-1-01-704, Order Modifying Plaintiffs' Proposed Class Notice (Dkt. # 71) (S.D. Ohio, August 19, 2003). In other words, defendants ask the Court to implement a concrete end date for inclusion in the class.

Defendants argue that future class members have yet to suffer any harm, can later seek to intervene if they do so, and will automatically benefit from any injunctive relief ultimately ordered. All of this is true enough and defendants argue that such a continually changing class will require "the prospect of perpetual notice." Plaintiffs respond by citing several district court cases where certified classes have included members through the present and argue that the court always has the discretion to modify the class if it becomes unmanageable. Although the Court is bothered by due process concerns about including future class members without additional notice,[8] plaintiffs appear to have the better of this argument, at least at this time. The question of whether additional notice (and opt out opportunity) to such future members is required by due process can be addressed at a later point in this litigation. And, while class members must be identifiable at the time of entry of any judgment for monetary damages, the defendants have not shown any good reason why they must be identified now. Plaintiffs' objection in this respect will be overruled.

### E. Information From Neutral Sources

The notice plan proposed by plaintiffs includes the use of a website

---

[8] Class counsel stated at oral argument that plaintiffs have no intention of providing additional notice beyond the initial mailing and publication of notice.

([www.SoutheastDairyClass.com](www.SoutheastDairyClass.com)) and a toll free telephone number "allowing Class Members to call and request a Notice be mailed to them, or request to be added to a list to be kept informed if and when future notices are ordered by the Court." [Doc. 982-1, Aff't. of S. Wheatman, ¶ 22]. A post office box will also be maintained "allowing Class Members to contact Class Counsel by mail with any specific request or questions." [Id., ¶ 23].

The defendants object on the basis that the website and telephone number "will be maintained under the supervision of Plaintiffs' counsel, Howrey, LLC." Defendants therefore, request the creation of a joint hotline for information based on collaboration between class counsel and defense counsel. Second, defendants request that the proposed notice specify that DFA and SMA may speak with class members who are members of the cooperatives about the litigation if: (1) Dairy farmer members pose questions to the defendants or defendants' counsel, and (2) the defendants need to communicate litigation related matters that could effect dairy farmer members' interests.[9]

The defendants' objections and/or requests are not well taken. With respect to the website, the information made available will be limited, at least initially, and will be subject to prior approval by the Court. Plaintiffs' plan proposes that initially the detailed notice, the consolidated amended complaint, the defendants' answers and the class certification order be posted on the website. The Court approves of the posting of these pleadings and also serves notice on the parties that it is likely to take a quite liberal position in the future on the scope of information to be made available to class members on the website. Any requests from any of the parties for the posting of additional

---

[9] It is not clear if defendants are suggesting an either/or scenario or whether they only seek to communicate if both criteria are met.

pleadings or additional information on the website will be entertained through an appropriate motion.

As noted earlier in this memorandum opinion, the prospective members of the class have become the clients of class counsel and it would be improper for the Court to limit communications between class counsel and class members, especially those which originate in the form of a question from a class member. Although Wheatman's affidavit suggests that the purpose of the toll free number is simply to allow class members to request copies of the notice, it is also clear that the toll free number may be used for the purpose of communication between class members and class counsel. The same is true of the post office box to be maintained. Such communications by class members to class counsel are entirely proper.

With respect to defendants' request for the creation of a joint hotline, the request is not well taken for several reasons. First of all, class members are the clients of class counsel, not defendants' counsel. Secondly, the authority relied upon by defendants for their requests, the *Manual for Complex Litigation*, refers only to situations where the Court might authorize defendants' counsel to answer inquiries "about a proposed class settlement." *MCL*, 4th § 21.33. Such is not the status of this case. The Court will not, therefore, approve the use of a joint hotline through which class counsel and defendants' counsel can jointly respond to questions from class members.

### F. Miscellaneous Errors

Defendants also raise several arguments in their objections to the proposed notice and in their alternative form of notice based on their disagreement with the words chosen by plaintiffs to convey certain information contained in the notice. Plaintiffs have revised the proposed notice to adopt some word changes urged by the defendants but resist other changes proposed by defendants as

unnecessary. Attached to this order is the notice approved by the Court to be sent to class members which incorporates all of the Court's rulings on these various issues. All of the "word choice" issues are resolved in that approved notice as well.

## II.     Notice Administration

Plaintiffs have retained Rust Consulting, Inc. ("Rust"), a company with considerable experience disseminating and managing class notices in complex antitrust class actions, and its sister company, Kinsella Media, as class action notice administrator. Rust will be tasked with the responsibility of (1) printing, assembling and mailing the notices; (2) causing publication of the "summary form" notices; (3) designing and maintaining the website; (4) receiving and recording opt out requests returned by class members to a post office box maintained on behalf of the Court; and (5) providing notices requested by prospective class members.

Although defendants appear to suggest that Rust is not a neutral class administrator, they present no evidence to support that and they do not propose any alternative. The defendants' reluctance with respect to Rust appears to arise from the fact that an employee of Rust's sister company, Kinsella, has been retained by plaintiffs as an expert to provide opinions related to the class notice plan. The Court is somewhat concerned that Wheatman's role to date has somewhat crossed the line between a neutral administrator and an "expert advocate," given her willingness to express opinions on ultimate legal issues[10] and to express opinions on issues without noting her factual basis for those opinions. That concern in and of itself is not sufficient for the Court to deny plaintiffs' request to retain Rust as class administrator. Rust, Kinsella, and Wheatman are simply cautioned that their role is that of assisting the Court in supplying impartial, neutral notice to class

[10]     Wheatman is not an attorney.

members and they are not advocates of the position of any party in this litigation in fulfilling that role. With that admonition, defendants' objection to Rust as class administrator is OVERRULED.

## III.     Notice Dissemination and Schedule

Plaintiffs propose to give notice by United States mail to approximately 7,500 prospective class members whose addresses have been obtained. These 7,500 dairy farmers represent more than 75% of the milk produced by class members during the class period. Although the defendants raise a somewhat general objection to this procedure, notice to class members whose addresses are known by United States mail is the "best notice practicable," *see Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-77 (1974), and defendants have not suggested any alternative method of notice. The plaintiffs also propose to publish half-page "summary notices" in *Hoard's Dairymen* and *Dairy Herd Management*, two dairy farm trade magazines, for prospective class members whose mailing addresses are not known. The defendants raise no objection to this manner of supplemental notice and notice in publications widely disseminated to dairy farmers is the "best notice practicable" apparent under the circumstances of this case. *See, e.g., In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 536 (3d Cir. 2004). Thus, the proposed method of dissemination of the notices is approved by the Court.

As to the schedule proposed by the plaintiffs, plaintiffs propose that the notices to dairy farmers whose names and addresses are known will occur within twenty (20) days of the Court's order approving the notice plan and that publication of the "summary notice" will occur in the first available issues of *Hoard's Dairymen* and *Dairy Herd Management*. At oral argument, the defendants suggested that notices should not be mailed or published until the Sixth Circuit renders a decision on the defendants' pending petition, pursuant to Rule 23(f), Federal Rules of Civil

Procedure, for leave to appeal this Court's class certification order. That petition, docketed as No. 10-504, was filed in the Sixth Circuit on September 23, 2010, and appears, from the Sixth Circuit's public docket sheet, to have been fully briefed.[11] The Sixth Circuit has not, however, ruled on the petition for an interlocutory appeal and it is unknown when it might do so.

Plaintiffs orally objected to any delay in giving notice, noting that an interlocutory appeal does not automatically stay proceedings and no motion for stay has been filed in either this Court or the Circuit Court of Appeals. That argument, however, misses the mark. The issue is not whether this Court should stay these proceedings pending the resolution of an appeal but rather whether this Court should delay notice to the class until the Sixth Circuit rules on the petition. There is some authority suggesting that the Court should, in fact, delay notice. *See Ramierz v. DeCoster*, 203 F.R.D. 30, D. Me. 2001) (delaying notice pending Court of Appeals ruling on the appropriateness of the class certification). *See also MCL*, 4th § 21.28 ("if the appeal is from a grant of certification, the district court should ordinarily stay the dissemination of class notice to avoid the confusion and the substantial expense of renotification that may result from appellate reversal or modification after notice dissemination.") (citing *Ramierz*).

Although it is unknown when the Sixth Circuit might rule on the petition, the Court agrees with defendants that the most prudent course of action is to delay notice to class members of the certification of the class until the Sixth Circuit has ruled on the petition. If the Sixth Circuit were to grant the petition, that might well result in a stay of these entire proceedings pending resolution of the class certification issues raised in the appeal. Notice will occur, therefore, within twenty (20) days of an order of the Sixth Circuit denying the petition for leave to appeal.

_____

[11] The Sixth Circuit's docket sheet was last checked on January 18, 2011.

Plaintiffs also propose that class members will have thirty (30) days from the date of mailing to exclude themselves from the class. At oral argument, defendants suggested that class members should have at least sixty (60) days to exclude themselves. Thirty (30) days appears to the Court to be a sufficient period of time within which an opt out decision can be made; however, the thirty (30) day period shall begin to run not from the date of mailing but rather from the date of mailing or the date of publication in either *Hoard's Dairymen* or *Dairy Herd Management*, whichever date is latest.

## IV. Class Counsel

In their motion, plaintiffs request that the Court appoint class counsel pursuant to Rule 23(g). More specifically, they request the appointment of Robert G. Abrams of Howery, LLP as class counsel and Thomas C. Jessee as liaison counsel, both of whom were previously appointed in the same capacity on an interim basis, [Doc. 36]. Now that the Court has certified a dairy farmer class, Rule 23(g)(1) requires that the Court "appoint class counsel." *Fed. R.Civ.P.* 23(g)(1). The defendants do not oppose plaintiffs' request.

This Court has previously found that Mr. Abrams and Mr. Jessee are experienced and knowledgeable in antitrust and class litigation, have the resources to commit to representing the class, and have vigorously identified and investigated potential claims on behalf of the class. Nothing before the Court now suggests otherwise. Plaintiffs' motion, therefore, is GRANTED in this respect and Robert G. Abrams, Esquire of Howery, LLP is appointed class counsel and Thomas C. Jessee, Esquire of Jessee and Jessee is appointed liaison counsel. Mr. Abrams shall have the duty to "fairly and adequately represent the interest of the class," *Fed. R. Civ. P.* 23(g)(4), including, but not necessarily limited to, the duties set forth in the Court's prior order and Mr. Jessee shall perform

the duties as set forth in the prior order.

So ordered.

ENTER:

<div align="center" style="margin-left:50%">
s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE
</div>