IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | |
|---|---|
| IN RE: SOUTHEASTERN MILK ) | |
| ANTITRUST LITIGATION ) | |
| ) | Master File No. 2:08-MD-1000 |
| ) | |
| THIS DOCUMENT RELATES TO: ) | Judge J. Ronnie Greer |
| *Sweetwater Farms, Inc., et al., v. Dean Foods*, ) | |
| *et al., No. 2:07-CV 208* ) | |

## MEMORANDUM OPINION

On July 12, 2011, plaintiffs in this class action antitrust case entered into a settlement agreement with Dean Foods Company, ("Dean"), subject to Court approval, to settle the claims of the class certified by the Court on September 7, 2010, [1] [see Doc. 934], for approximately $140 million in exchange for a full release from the class. On July 14, 2011, the Court preliminarily approved the settlement, authorized dissemination of a notice regarding the settlement, and scheduled a fairness hearing, [see Doc. 1641]. On July 28, 2011, the Court granted defendants' motion and decertified the DFA subclass, finding a "conflict of interest among class members requiring the Court to decertify" the DFA member subclass [2], [Doc. 1681 at 6].

---

[1] The Court had certified the antitrust claims of a class of all dairy farmers who produced Grade A milk within Federal Milk Market Orders 5 and 7 and who sold milk to co-conspirators between January 1, 2001, to the present and divided the class into two subclasses: (1) independent dairy farmers and cooperative members, and (2) DFA members. Such a subdivision had been requested by plaintiffs because they also assert a breach of contract claim on behalf of DFA members against DFA. The Court refused to certify a class with respect to the breach of contract claim but nevertheless divided the class into the two subclasses due to its concern of a possible conflict of interest between the two groups.

[2] Before notice was given, the Court was asked to preliminarily approve plaintiffs' settlement with two other defendants, Southern Marketing Agency, Inc. (SMA) and James Baird (Baird), [see Doc. 1676]. That approval was given on July 28, 2011, [see Doc. 1680]. Although SMA and Baird have not moved to

Dean now moves the Court "To Vacate Preliminary Approval, Stay Dissemination Of Settlement Notice And Other Deadlines Associated With The Settlement, and Clarify The Role Of Class Counsel," [Doc. 1714]. Plaintiffs have responded in opposition, [Doc. 1721], and the Court heard oral argument on August 12, 2011. The trial which was scheduled for August 16, 2011, has been continued until September 13, 2011, to give the Court necessary the time to properly consider and decide the motion. For the reasons which follow, the Court has reluctantly granted the motion, [see Order, Doc. 1728, entered August 19, 2011].

On its face, at this early stage, the settlement agreement appears to be fair and reasonable. Nothing about the settlement, which is strictly a monetary settlement, at least given the current state of the record, suggests that southeast DFA dairy farmers included within the definition of the DFA member subclass would be harmed or worse off by the settlement; indeed, the alternative for them is to receive nothing, at least through this litigation, but still be potentially subject to injunctive relief which may impair their interests if the independent dairy farmer subclass ultimately prevails at trial.

The settlement agreement was arrived at through "arms length" negotiations after the parties' claims and defenses had been subject to an intense three–year long adversarial process. There certainly is no evidence of any collusive negotiations or that the negotiations process was anything other than a fair one. The settlement agreement was negotiated by able, experienced counsel who were authorized at the time to settle the matter on behalf of the full class, with the assistance of a very capable, experienced mediator. All parties were fully aware of the pending motions. The case itself cries out to be settled– all parties face enormous risk if the case is tried. Dean represents that it stands

---

vacate their settlement, they orally indicated at oral argument on August 12, 2011, that they will do so if Dean's current motion is granted. In a telephone conference on August 26, 2011, counsel for SMA and Baird informed the Court that they do not intend to move to vacate the settlement agreement.

2

ready to fully perform, and has already partially performed, its agreement. And yet Dean believes itself to now be at risk of not being able to obtain the very thing it bargained for, i.e., valid, enforceable releases from the class previously certified. It is therein that this Court's decertification order becomes a problem.

Two Supreme Court decisions inform the Court's decision on this motion, *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) and *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999). Both grew out of the effort to find a global solution to current and future asbestos-related claims. In *Amchem*, the Supreme Court affirmed the Third Circuit's decision to vacate a class certification for the purpose of a settlement of claims with hundreds of thousands, possibly millions, of persons exposed to asbestos products manufactured by 20 different companies. *Amchem*, 521 U.S. at 597. Objectors to the settlement opposed the aggregation into a single class of those who had already suffered asbestos related injuries and those exposed but who had not yet shown signs of injury. *Id.* at 607-08. The Court found the two subgroups to have different interests in the distribution of the settlement proceeds such that the interests of holders of the current claims and those of holders of future claims were in conflict and this was fatal to class certification. *Id.* at 627.

The Supreme Court clearly set out the rule to be applied by district courts when considering the certification of a settlement only class: [3]

> Confronted with a request for settlement–only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. Rule Civ. Proc. 23(d)(3)(D), for the proposal is that there be no trial. But other

---

[3] The plaintiffs have not moved for certification of a settlement only class here. Given that Dean's settlement agreement contemplated a settlement with a class that no longer exists because of the Court's order decertifying the DFA member subclass, that is, however, as a practical matter, the issue that now confronts the Court, i.e., can the Court approve Dean's settlement with the class previously certified while another class is certified for litigation purposes?

3

> specifications of the Rule–those designed to protect absentees by blocking unwarranted or overbroad class definitions–demand undiluted, even heightened, attention in the settlement context. Such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold. See Rule 23(c), (d).

*Amchem*, 521 U.S. at 620. [4]

Two years after *Amchem*, the Supreme Court was again confronted with a proposed settlement class for purposes of a global settlement of asbestos claims in *Ortiz*. As with *Amchem*, the proposed settlement class contained holders of both present and future claims and holders of "more valuable" and less valuable claims. [5] *Ortiz*, 527 U.S. at 856-57. Likewise, no subclasses with separate counsel had been formed. The Supreme Court once again denied certification of the class without "***reclassification with separate counsel***." *Id.* at 857. (emphasis added).

Although *Amchem* and *Ortiz* dealt with classes formed for the purpose of settlement only and not for litigation, their application to this case is obvious. Before the Court can approve Dean's settlement with the class, the Court must make an "undiluted" determination that the class including both DFA member dairy farmers and independent dairy farmers meets the requirements of Rule 23 and the Court may not "substitute for Rule 23's certification criteria a standard never adopted– that if a settlement is "fair" then certification is proper." *Amchem*, 521 U.S. at 622; *Ortiz*, 527 U.S. at 858-59 (the possible fairness of the settlement cannot eclipse the Rule 23 certification requirements).

---

[4] Although *Amchem* requires "undiluted, even heightened" attention to the requirements of Rule 23 in the settlement context, it appears that the requirement for heightened scrutiny would apply only where the question had not been subjected to the adversarial process, something which in fact has happened here.

[5] Claims based on asbestos exposure that occurred when Fibreboard was insured had a higher value than those for exposure after the insurance had expired because the former group could recover from the insurer. *Ortiz*, 527 U.S. at 823 n.2.

4

In other words, the adequacy of representation requirement of Rule 23 cannot be met just because the settlement meets the aggregate interests of the class.

Here, class counsel and representatives have undertaken to represent the interests of all dairy farmers, whether DFA members or not, and "each served generally as a representative for the whole, not for a separate constituency." *Amchem*, 521 U.S. at 627. This Court has now found "a conflict of interest [between DFA dairy farmers and independent dairy farmers] requiring the Court to decertify" the DFA member subclass. [6]

Plaintiffs rely largely on the case of *Ramirez v. DeCoster*, 203 F.R.D. 30 (D.Me. 2001) to support their argument that the Court's partial decertification of the class does not mean that the Court cannot approve the class for settlement purposes. *Ramirez* is easily distinguishable from the present case, however.

*Ramirez* was a putative class action by agricultural workers against the operators of an egg plant, alleging racial and ethnic discrimination. Almost two years after the filing of the lawsuit, with pending motions for class certification and summary judgment, the parties, including the government of Mexico, which had previously been dismissed as a party plaintiff, entered into a mediated settlement. Because the parties were never able thereafter to work out details related to the settlement, no written settlement agreement was ever filed with the court and the court was not notified of the settlement. *See Ramirez v. DeCoster*, 142 F. Supp. 2d 104, 108, 111 fn.9 (D. Me., June 1, 2001). As a result, the district court decided the pending motions, denying the motion for class certification in its entirety on grounds that the "issues to be tried involving the class would be

---

[6] During a telephone conference on August 30, 2011, counsel for Dean suggested that the Court had made a factual finding of an intraclass conflict within the previously certified DFA subclass. Regardless of the language used in prior orders, such an interpretation of the Court's prior orders is incorrect.

5

unmanageable." *See Ramirez v. DeCoster*, 194 F.R.D. 348, 353 (D. Me., March 31, 2000).

Plaintiffs then brought a motion to enforce the settlement, the material terms of which had been memorialized in writing by the mediator at the conclusion of mediation. The district court granted the motion, finding that the parties had entered into a contractually enforceable contract, subject to "court approval under the strictures of Rule 23." 142 F. Supp. 2d at 116. Plaintiffs then moved the court, in accordance with the settlement agreement, to certify a class for settlement, make a preliminary determination of fairness under Rule 23(e), and to approve notice to the class of the settlement and the final fairness hearing. Plaintiffs specifically argued that, even though the court had refused to certify the class for trial, certification of a settlement class was still appropriate. 203 F.R.D. at 32. The district court analyzed the issue under the standards announced in *Amchem*, and granted the motion, certifying, for settlement purposes, the same class it had previously refused to certify. *Id.* The district court made some important findings. First, the court observed that "[t]wo of *Amchem's* important concerns" were not present with respect to certifying the class for settlement purposes, i.e., the bargain reached had the benefit of the adversarial process and it arose under the threat of litigation. 203 F.R.D. at 33 fn.2. Second, the prior order denying certification of the class had been based "primarily on the trial management difficulties of the proposed class action." *Id*. at fn.3. Finally, the court found "no divergence between the interests of a portion of the class and the named plaintiffs," i.e., no direct conflict of interest. *Id*. at 34.

As in *Ramirez*, this settlement had the benefit of a vigorous adversarial process and it arose in the context of hotly contested litigation and a looming trial. Thus, it appears that some of the "structural" protections absent in *Amchem* are also present here. That is where the comparison with *Ramirez* ends, however. Here, the Court's decertification order had nothing to do with any

6

management difficulties. Indeed, the Court has found specifically that a class action is superior to other available methods for adjudicating the controversy. Finally, this Court has now found a conflict of interest between DFA members of the class and non-DFA members of the class which can only be cured by subclasses represented by separate counsel. This finding goes to the heart of *Amchem's* demand of "structural assurance of fair and adequate representation for the diverse groups and individuals affected" before a class can satisfy Rule 24(a)(4). *Amchem*, 521 U.S. at 627.

This Court would like nothing better than to deny Dean's motion, especially in view of the fact that Dean entered into the settlement agreement with full knowledge of the possibility of the conflict now identified and the pending decertification motion. The pending motion is specifically referenced in the settlement agreement ("Upon the filing of the motion requesting entry of a Preliminary Approval Order, the Settling Defendant (Dean) will not participate in further briefing or argument of the pending motions to decertify the Class."), [7] and all farmers in the previously certified class will be entitled to a monetary payment. [8] The Court, despite its sympathies with plaintiffs here, is nevertheless required to follow the law, although it has searched mightily for a reason to deny the motion.

This brings the Court to one other issue raised by plaintiffs. They argue, with considerable common sense logic, that Dean should be bound by a settlement it entered into with eyes wide open

---

[7] Dean has not breached this agreement.

[8] The effect of the grant of the motion is to deny DFA member farmers participation in what otherwise appears to be a fair and reasonable, maybe potentially a windfall, payment to them. To the extent they have a valid claim against Dean, however, they can still pursue it represented by separate counsel, either in this or some other court.

7

to the possibility that the Court might grant the motion to decertify.[9] Plaintiffs cite two cases in support of their argument that a change in circumstances subsequent to the entry of a settlement agreement, even in a class action case, should not prevent approval of the settlement, just because the circumstances are now not to the liking of one of the parties. They cite the Third Circuit decision in *Ehrheart v. Verizon Wireless*, 609 F.3d 590 (3d Cir. 2010) and the Ninth Circuit decision in *In re Syncor ERISA Litigation*, 516 F.3d 1095 (2008). Unfortunately for plaintiffs, both cases are easily distinguishable. In *Ehrheart*, the parties reached a class action settlement related to buyers' claims under the Fair and Accurate Credit Transaction Act, at a time when there was legislation pending before Congress which would eliminate plaintiffs' cause of action. After completing mediation and entering into a settlement agreement, Congress passed the pending legislation and it was signed into law. Verizon then moved for vacation of the order granting preliminary approval of the settlement. *Ehrheart*, 609 F.3d at 592.

The district court granted the motion and the Third Circuit reversed. The Third Circuit noted that, in entering into the settlement agreement, "Verizon bet on the certainty of settlement instead of gambling on the uncertainties of future legislative action. Verizon lost, and the District Court erred by letting it replay its hand." *Id*. at 594. The court then held that, "[w]here as here, the parties have executed an agreement, a party cannot avoid its independent contractual obligation simply because a change in the law confers upon it a benefit that could have altered the settlement calculus." *Id*. at 596.

In *Syncor*, the parties entered into a class action settlement with motions for summary

---

[9] Dean's counsel acknowledged that Dean had done so, arguing only that he did not think the Court was going to grant the motion. Those are indeed the kind of assessments litigants always have to make when negotiating a settlement.

8

Case 2:07-cv-00208 Document 1262 Filed 08/31/11 Page 8 of 10 PageID #: 27564

judgment then pending. Even though the parties provided notice to the court of their settlement, the district court nevertheless entered an order granting the motions for summary judgment and entering final judgment against the class. *Syncor*, 516 F.3d at 1099. The Ninth Circuit, noting the "strong judicial policy that favors settlements, particularly where complex class litigation is concerned," *id*. at 1101, reversed the district court holding that, "[a]t the time of the settlement, Defendants knew they had dispositive motions pending and chose the certainty of settlement rather than the gamble of a ruling on their motions." *Id*. at 1100.

As noted above, both these cases are easily distinguishable. While, at first glance, it would appear that the circumstances are similar in that Dean entered into this settlement agreement with full knowledge of the pending motion to decertify, the difference is that the changed circumstances here relate to whether the Rule 23 requirements are met, rather than a change in circumstances which make Dean's bargain no longer to its liking. In fact, Dean expresses a preference to go forward with its settlement agreement if it can get what it bargained for, e.g., releases from the class certified in September, 2010. Because this Court has now found that the requirements of Rule 23 for class certification of the entire class are not met, Dean cannot, as things stand, get the benefit of its bargain. Although Dean and the plaintiffs have entered into a valid, binding settlement, the settlement cannot, as things stand now, be finally approved by the Court because of the conflict of interest which exists. Thus, neither *Ehrheart* nor *Syncor* help the plaintiffs here.

For the reasons set forth herein, the Court has no choice but to grant Dean's motion. This does not mean, however, that the joint motion to preliminarily approve the settlement agreement must be denied or that the settlement cannot under any circumstances be finally approved. Since this matter has been subject to the adversarial process and potential class members have been afforded

9

significant structural protections, except for representation by separate counsel, it seems to the Court that the appropriate course is for the Court to take the joint motion for preliminary approval of the settlement under advisement pending appointment of separate counsel and class representatives for the DFA subclass. After an appropriate opportunity for counsel to review the matter, it may be possible for the Court to certify the DFA subclass for settlement purposes, grant the motion to preliminary approve the settlement agreement, give notice of the settlement and proceed with a fairness hearing where objections, if any, can be heard and resolved. Before proceeding with that resolution, however, the Court will give the parties an opportunity to be heard. To the extent any party wishes to do so, it may comment on the Court's proposed action by written pleading filed not later than the close of business on Thursday, September 1, 2011. The Court will thereafter schedule a further telephonic conference with counsel. Counsel should be prepared at that time to address the status of the September 13 trial date.

    So ordered.

    ENTER:

s/J. RONNIE GREER  
UNITED STATES DISTRICT JUDGE
